IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION


| | | |
|---|---|---|
| CHASE BARFIELD, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 11-4321-NKL |
| | ) | |
| SHO-ME POWER ELECTRIC | ) | |
| COOPERATIVE, et. al., | ) | |
| | ) | |
| Defendants. | ) | |


**ORDER**

This action is brought as a putative class action on behalf of approximately 3,000 landowners for alleged misuse of electric transmission line easements. Pending currently before the Court are six motions: a Motions to Dismiss [Doc. # 33], and later a Motion to Renew the initial Motion to Dismiss [Doc. # 69], filed by Defendants Sho-Me Power Electric Cooperative and Sho-Me Technologies ("Sho-Me"); a Motion to Dismiss the Original Complaint [Doc. # 34] and a Motion to Dismiss the Amended Complaint [Doc. # 70] filed by Defendants KAMO Electric Cooperative ("KAMO"); Motion for Order to Take Judicial Notice filed by Sho-Me [Doc. # 78]; and Sho-Me's Motion to Change Venue [Doc. # 23].

Both Sho-Me and KAMO filed an initial motion to dismiss directed at Plaintiffs' original complaint. Plaintiffs then filed a First Amended Complaint on February 17, 2012, after which Sho-Me filed a motion to renew the original motion to dismiss and KAMO filed a new motion to dismiss though requesting that the original motion and supporting

documentation not be mooted. At both Defendants' request, therefore, the Court will consider both sets of motions and related briefings with respect to the amended complaint.

## I.    Facts

Plaintiffs' action consists of a trespass claim, unjust enrichment claim and requests for declaratory and injunctive relief relating to Defendants' alleged unauthorized use of Plaintiffs' land to install and operate a commercial fiber-optic-communications network. The facts in this section are taken directly from Plaintiffs' Amended Complaint and are presumed true for the purposes of the motions to dismiss.

Plaintiff Chase Barfield is a Florida citizen who owns land in Hickory County, Missouri, through which KAMO installed and is operating a commercial fiber-optic-communications network, independent of the transmission or distribution of electricity. Plaintiffs Michael D. Biffle and Gina Biffle are Missouri citizens who own land in Oregon County, Missouri, through which Sho-Me installed and is operating a commercial fiber-optic-communications network, independent of the transmission or distribution of electricity. Plaintiff Dwight K. Robertson is a citizen and resident of Miller County, Missouri. He owns land in Miller County, Missouri, through which Sho-Me installed and is operating a commercial fiber-optic-communications network, independent of the transmission or distribution of electricity.

Sho-Me has an easement over the land of Robertson and the Biffles. KAMO has an easement over Barfield's land. Fiber-optic cable was installed alongside the electric-transmission lines on the Biffles' property, on Robertson's property, and on

2

Barfield's property. None of the named Plaintiffs was given prior notice of the installation. Defendants did not negotiate or pay for a separate easement for the installation or use of fiber-optic cable for commercial-communications purposes, which Plaintiffs allege is in violation of their easement agreements with Defendants.

Substantial miles are under construction in Missouri by one or more Defendants. Defendants have entered into license agreements and/or interconnection agreements so that they can use capacity on each other's fiber optic network for commercial communications. In order to complete their network, Defendants have installed or operate fiber-optic cable on many miles of land on which they hold easements that Plaintiffs claim are limited to electric–transmission purposes. Defendants have contracted with each other and with third parties to use the fiber-optic facilities installed on this land for a commercial-communications network. By using the fiber-optic facilities for a new commercial-communications network, Defendants have received or expect to receive revenue from the use of this land.

## II.   Discussion

### A.   KAMO Motions to Dismiss

#### 1.   Local Controversy Exception

Federal jurisdiction in this action derives from the diversity of the parties.[1] Although complete diversity is not required for the Court to exercise jurisdiction under 28 U.S.C.A.

---

[1] Plaintiff Barfield is a citizen of Florida, Plaintiffs Biffle and Robertson are citizens of Missouri, Defendant Sho-Me is a citizen of Missouri, and Defendant KAMO is a citizen of Oklahoma.

§ 1332(d)(2), subsections § 1332(d)(4) requires courts to decline to exercise jurisdiction when "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed …."  The mandatory exception, commonly known as the "local-controversy" exception to the Class Action Fairness Act ("CAFA"), contains four requirements:

> Under the local-controversy exception, a district court must decline to exercise jurisdiction over a class action in which [1] more than two-thirds of the class members in the aggregate are citizens of the state in which the action was originally filed, [2] at least one defendant "from whom significant relief is sought by members of the plaintiff class" and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class" is a citizen of the state in which the class action was originally filed, [3] the principal injuries were incurred in the state in which the action was filed, and [4] no other class action alleging similar facts was filed in the three years prior to the commencement of the current class action.

*Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010); 28 U.S.C. §1332(d)(4)(A).  The party seeking to invoke the local controversy exception bears the burden of establishing by a preponderance of the evidence that it applies.  *See Phillips v. Wellpoint, Inc.*, No. 10-cv-357-JPG, 2010 WL 4877718, at *4 (S.D. Ill. Nov. 23, 2010). CAFA's text favors federal jurisdiction over class actions and all doubts are to be resolved in favor of federal jurisdiction.  *Evans v. Walker Indus., Inc.*, 449 F.3d 1159, 1163-64 (11th Cir. 2006) (quoting S. REP. NO. 109-14, at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40). KAMO argues that all four prongs are met in this case and thus federal subject matter jurisdiction is precluded.  Plaintiffs only concede that the second prong is met, as SHO-ME Defendants are citizens of Missouri.

4

KAMO argues that this case satisfies the first prong of the "local controversy" exception because more than two-thirds of the members of the proposed class are citizens of the state in which the action was originally filed. *See* 28 U.S.C. § 1332(d)(4)(i)(I).

It is undisputed that the putative class consists "of all members who own land in Missouri underlying Defendants' electric-transmission or distribution lines and on or in which a Defendant had installed – or announced plans for the installation of – fiber-optic cable." [Doc. # 36 at 7]. Therefore, KAMO argues that because the proposed class own, or have owned, land in Missouri, there should be a presumption that more than two-thirds of the members of the class are currently Missouri citizens. To support this presumption, KAMO provides documentation which it claims establishes that more than two-thirds of putative class members are Missouri citizens. This documentation includes (1) current mailing addresses for retail electric customers of two of KAMO's member owners,[2] (2) current mailing addresses for property tax bills in two counties, Hickory and Polk,[3] and (3)

---

[2] The member owners, Sac Osage Electric Cooperative and Southwest Electric Cooperative, serve metered customers in nine Missouri counties and eleven Missouri counties, respectively. They both reported that over 90% of the bills mailed were sent to Missouri zip codes.

[3] The Assessor for Hickory County (the county where Barfield's property is located) reports that 85% of the parcels of real property in the county have tax mailing addresses within the State of Missouri. [See Doc. # 72, Ex. A]. The Polk County Assessor reports that 97.6% of the parcels of real property in that county have tax mailing addresses within the State of Missouri. [See Doc. # 72, Ex. B].

5

mailing addresses (if shown) on deeds the last time a property burdened by an electric easement was transferred in Hickory County.[4]

The majority of courts have held that a "court may not draw conclusions about the citizenship of class members on things like their phone numbers and mailing addresses." *In re Sprint Nextel Corp.*, 593 F.3d 669, 673, 674 (7th Cir. 2010) (acknowledging that the court's ruling aligned with that of the majority of district courts). As the Seventh Circuit put it, presuming citizenship based on such factors as mailing addresses is "[s]ensible guesswork, based on a sense of how the word works," but "[t]here are any number of ways in which [] assumptions about the citizenship of [the class] might differ from reality." *Id.* at 674.

Here, land ownership in a state may be suggestive of domiciliary; however, it is not conclusive, as out-of-state individuals or corporate entities may own significant property within the state. Further complicating matters is the fact that this class spans over a decade of ownership of electric easement land in Missouri. The simple fact that all members of the class had to have owned Missouri land at some point over the past ten years is not sufficient to establish that these owners were Missouri citizens at the time the complaint was filed.[5]

_____

[4] KAMO submitted an affidavit showing that "[o]f the 48 different real property owners whose mailing addresses are listed in the documents recorded with the Hickory County Record's office, only 3 owners listed mailing addresses outside the State of Missouri.

[5] *See Nichols v. Progressive Direct Ins. Co.*, No. 06-146-DLB, 2007 WL 1035014, at *3 (E.D. Ky. Mar. 31, 2007) ("Plaintiffs also propose a class period of approximately five years. To conclude that over this period at least two-thirds of these persons remained citizens of the state would be sheer speculation at this stage."); *Phillips v. Wellpoint*, No. 10-cv-357-JPG, 2010 WL 4877718, at * 4 (S.D. Ill. Nov. 23, 2010) ("[T]he Court cannot and will not assume that every individual and group. . . policyholder that was a citizen of Illinois [eight years ago] has remained so to this date.").

The evidence provided by KAMO is insufficient to fill in these gaps. The sample of mailing addresses of owners of electric easement land only shows the most recent mailing addresses of the current landowners, and does not reflect the addresses of past owners. Next, the tax bills from Hickory and Polk Counties only indicate the mailing addresses of the person designated to receive the tax bill for each property. Out-of-state citizens can designate an in-state resident to receive the tax bill, and the sample also may exclude from consideration information about joint owners or trust beneficiaries and members of unincorporated entities. These omissions make tax mailing addresses, at least as they are currently presented, a poor proxy for in-state citizenship. It is also not clear that data provided for Hickory and Polk Counties would be sufficiently representative of the nature of property ownership across the entire state. Further, KAMO has not established how a sample of property owners receiving retail electric service from distribution cooperatives can serve as a substitute for owners of property with transmission lines on their property. More information would have to be provided as to why these two classes overlap to the extent that a sample of mailing addresses from the former group could accurately be used to represent those of the latter group. Thus, for the above reasons, and given the narrow interpretation to be given to the local controversy exception under CAFA, KAMO has failed to establish beyond a preponderance of the evidence that the first prong of the local controversy exception is met.[6]

---

[6] Because all four prongs must be satisfied to trigger the local controversy exception, the failure of the Defendants to succeed on the first prong is fatal to their position. However, the Court will consider all four prongs for completeness since this is an issue that affects the Court's jurisdiction.

ii. Fourth Prong

The fourth requirement of § 1332(d)(4)(A)(ii) is that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." Plaintiff Biffle previously filed a similar case in state court against Sho-Me, which was voluntarily dismissed shortly after the federal class action was filed; however, KAMO reads CAFA as requiring the local controversy exception to apply unless a previous, similar case is still pending. Even if KAMO's interpretation of the statute were correct, it would not put the case within the ambit of the fourth prong, as at the time the current complaint was filed, the state-law class action was still pending in Missouri state court.

First, questions relating to subject matter jurisdiction are determined as of the time the complaint was filed. *See Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc.*, 149 F.3d 794, 796 (8th Cir. 1998) ("[W]e determine diversity of citizenship at the time an action is filed."). Second, CAFA indicates that the local controversy exception determinations are to be analyzed in the same way as jurisdictional matters. 28 U.S.C. § 1332(d)(7).[7] Therefore, due to the fact that a similar action was pending at the time of filing, the fourth requirement of the local controversy exception does not apply here.

KAMO argues that it would be "ironic if CAFA allowed Plaintiffs to completely deny the KAMO Defendants access to state court merely by filing - then voluntarily dismissing -

_____

[7] *See also* S. REP NO. 109-14, 2005 U.S.C.C.A.N. 3, 34 ("New subsection 1332(d)(7) clarifies that the citizenship of members of proposed classes would be determined as of the date the action was filed.").

a putative class action involving one of the KAMO Defendants' co-defendants in state court." [Doc. # 72 at 9]. However, KAMO has failed to provide any law supporting the invocation of the fourth prong simply on the grounds that the prior state claim was voluntarily dismissed after the federal lawsuit was filed. There is nothing in CAFA that prohibits plaintiffs from voluntarily dismissing state cases, or from seeking a federal forum instead to add new defendants and claims. [See Doc. # 36-4 at 1]. Indeed, CAFA was passed to make it easier for cases to be filed in federal court, not to make it easier for class actions to be filed or kept in state court.

### iii. Third Prong

The third prong of the local controversy exception is met when the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III). KAMO argues that this exception applies here because "Plaintiffs claim Defendants trespassed on land located in the State of Missouri by placing fiber-optic cable on that land and that Defendants were unjustly enriched as a result." [Doc. # 36 at 10]. However, Plaintiffs argue that the legislative history indicates that Congress did not intend the third prong to apply to a case in which Defendants' conduct allegedly caused injuries in several states. As support, Plaintiffs offer the Senate Report's discussion of the third prong:

> By the [principal injuries] criterion, the Committee means that all or almost all of the damage caused by defendants' alleged conduct occurred in the state where the suit was brought. The purpose of this criterion is to ensure that this exception is used only where the impact of the misconduct alleged by the purported class is localized. For example, a class action in which local

9

residents seek compensation for property damage resulting from a chemical leak at a manufacturing plant in that community would fit this criterion, provided that the property damage was limited to residents in the vicinity of the plant. However, if the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, *even if it were brought only as a single-state class action.*

S. REP. NO. 109-14, 2005 U.S.C.C.A.N. 3, 40 (emphasis added).[8]

Here, Plaintiffs have pled that the fiber optic networks at issue in this case run through multiple states and are used in those states for commercial communications purposes. [*See* Complaint, Ex. 1, Doc. #52-1]. However, it is also clear that the damages that Plaintiffs are seeking relate to real property in Missouri. It is hard to think of a more local controversy. On balance, the Defendants have the better argument on this prong.

As KAMO has failed to establish two of the four requirements for the local controversy exception, the Court concludes it has jurisdiction over the controversy.

### 2. 12(b)(6) Claim

KAMO argues that Plaintiffs fail to state a claim under Rule 12(b)(6) because KAMO's recorded easement encumbering the Barfield Property permits the conduct at the heart of Barfield's claims. As support for this claim, Defendants attach a written record of the Barfield easement, which is alleged to be filed with the Hickory County Recorder but is not found in the Recorder's Book. [Doc. # 36, Ex. E]. Barfield claims that this document

---

[8] Section two of CAFA finds that state courts are "keeping cases of national importance out of federal court" and states that the purpose of the act is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Pub. L. No. 1099-2. § 2.

10

cannot properly be considered on a motion to dismiss because it is outside the pleadings. However, KAMO argues that the easement document is "necessarily embraced by the Complaint" and thus can properly be considered within a motion to dismiss. [Doc. # 36 at 8]; *see Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (holding letter terminating distributorship agreement was "necessarily embraced by the [breach of contract] complaint" and thus not outside the pleadings for determining whether the claim was time barred). KAMO also argues that the Court should take judicial notice of the document as being a "public record."

KAMO's arguments are unpersuasive. First, Barfield disputes whether the written document applies to Plaintiffs' claims. The Eighth Circuit has rejected the same argument in a similar case, in which a defendant attempted to introduce several contractual documents in a breach of contract action. *BJC Health System v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003). The defendant there claimed that these contractual records were the only documents that might give rise to plaintiff's breach of contract claim. However, the court ruled that the "[the plaintiff] alleged the existence of a contract, not a specific document, and the documents provided by [the defendant] were neither undisputed nor the sole basis for [the plaintiff's] complaint." *Id.*

Here, KAMO has produced a single written document purporting to outline the limits of KAMO's easement on Barfield's land. At this stage, however, it cannot be shown that this document represents the only legal agreement relevant to Barfield's claim, or even that it is valid. Barfield claims that the written easement was not properly recorded and thus KAMO's

11

easement is only prescriptive. Given that Barfield challenges the very applicability of the written easement to the dispute, this document cannot be considered by the Court in ruling on the 12(b) 6 motion. Further, as the easement was never recorded at the Hickory County Recorder's Office, it cannot be considered a public record.[9]

As the easement record submitted by KAMO is not necessarily embraced by the pleadings nor a public record, there is not current grounds to consider it in this motion. The remaining arguments in KAMO's motion to dismiss were dependent upon the Court's consideration of the written easement, and thus the Court will not consider them here.

### B. Sho-Me Motion to Change Venue

The Sho-Me Defendants seek a transfer to the Southern Division of the District. Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In addition to the interest of justice and the convenience of the parties and witnesses, "a motion to transfer under Section 1404(a) calls on the district court to weigh in the balance a number of case-specific factors." *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

---

[9] The KAMO Defendants also argue that the unrecorded easement still controls because its electric lines are visible upon ordinary inspection and thus its servitude was apparent. However, it is not undisputed that such visibility makes it apparent that a servitude for commercial communications existed.

A district court possesses broad discretion in deciding whether to transfer venue under § 1404(a). *Terra Int'l,* 119 F.3d at 695. Courts give considerable deference to Plaintiff's choice of forum and the Defendant bears the burden of overriding that deference. *Id.*; *New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102 (2nd Cir. 2010) (movant must provide "clear and convincing evidence" to warrant transfer).

The Court declines to transfer venue. Plaintiffs' choice of forum is entitled to substantial deference, and Sho-Me has not presented sufficient evidence of hardship to override this deference. The interests of justice clearly favor maintaining venue in the Central Division, because the Plaintiffs chose to litigate here, Plaintiff Robertson is a resident of the Central Division,[10] and both Plaintiff Barfield and Robertson's claims arose in the Central Division, where the land at issue in their claims is located. The comparative costs of litigating will be greater for Plaintiffs in the Southern Division and greater for Sho-Me in the Central Division, thus rendering it a neutral factor. Sho-Me does point to several convenience factors in support of a change of venue, including the fact that its potential employee-witnesses are located in the Southern Division and would have to travel two hours

---

[10] Defendants argue that Plaintiffs' choice of forum should be entitled to minimal weight because Plaintiff Robertson was added after the initial motion to change venue was filed. However, the operative facts of Robertson's claims arose before the initial claim was filed and occurred, along with the facts in Barfield's claim, entirely in the Central Division. The case cited by Defendants in support of reduced deference, *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) is distinguishable, as it did not involve 28 U.S.C. § 1404, but instead a motion to dismiss based on forum non conveniens and involved a foreign plaintiff whose claims only involved "tenuous connections to the United States" and who even conceded that it added a co-plaintiff after the initial motion to dismiss was filed partly to strengthen its U.S. connections to the case. *Id.* at 694. The strong evidence of forum-shopping present in *Vivendi* is absent here.

to Jefferson City to testify.  However, these witnesses are party-witnesses and thus their inconvenience does not weigh as heavily.  Given the location of the operative events at the heart of Barfield and Robertson's claims, there is also the possibility that witnesses who reside in the Central Division may be needed, requiring them to travel.  Further, the fact that Sho-Me's records are located in the Southern Division is a neutral factor, as the presence of electronic discovery reduces costs associated with transporting documents.  The convenience factors thus fail to make a case that venue should be transferred at the expense of  Plaintiffs' choice of forum.

### C.    Sho-Me Motions to Dismiss

#### 1.    Barfield Claim

Sho-Me claims that Barfield has failed to state a claim against Sho-Me because he does not allege that Sho-Me has an easement on his property or that it committed any alleged trespass upon his property.  It is undisputed that Sho-Me lacks an easement on Barfield's property.  However, the Complaint alleges that Sho-Me and KAMO "sometimes do business together as Cooperatives' Broadband Network" and have "entered into license agreements and/or interconnection agreements so that they can use capacity on each other's fiber optic network for commercial communications."  [Doc. # 52 at 1].  Drawing all inferences in favor of Barfield, it is plausible that the two companies are in a joint venture to install and operate a fiber-optic network, and Sho-Me could thus be liable for trespass to Barfield.  *See also Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 387 (Mo. Ct. App. 1999) ("A joint venture is essentially 'an association of two or more persons to carry out a

14

single business enterprise for profit.") (quoting *Eads v. Kinstler Agency, Inc.*, 929 S.W.2d 289, 292 (Mo. Ct. App. 1996)). Discovery and summary judgment is the place to resolve these questions, not a motion to dismiss.

### 2. Biffles' Trespass Claim

Sho-Me also argues that the Biffles have failed to state a claim for trespass. Plaintiffs' trespass claims allege a violation based on the "installation, maintenance, lease or other operation of a fiber-optic cable network for commercial communications purposes." [Doc. # 74 at 13]. There are multiple types of trespass alleged here, including trespass based on installation of fiber optic cables for commercial communications purposes and trespass based on the use of fiber-optic cables for these same purposes. Sho-Me argues that the use of fiber-optic cables for transmission of light signals[11] cannot constitute trespass under existing law. In support of this proposition, they cite an Eighth Circuit case which held that the transmission of light signals for commercial telecommunication purposes could not constitute a new or continuing trespass under Arkansas law. *See International Paper Company v. MCI WorldCom Network Services, Inc.* 442 F.3d 633, (8th Cir. 2006).[12] In that case, the court stated:

---

[11] According to Sho-Me, "[w]hen light pulses through fiber-optic strands on the Sho-Me Defendants' system, it contains a code with a combination of electric transmission and commercial information. The information is not decoded until it is ready to exit the Sho-Me Defendants' system at one of Sho-Me Defendants' facilities." [Doc. #74 at 12, fn 11].

[12] The Plaintiffs argue that because the original trespass claim had been discharged in bankruptcy that this somehow renders *International Paper's* holding inapplicable. However, the fact that a bankruptcy occurred is irrelevant for the purposes of the Eighth Circuit's decision, as it directly addressed the question of whether transmission of light signals can constitute a trespass under Arkansas law.

15

IP argues that although MoPac had the right to grant MCI an easement to use the fiber optic cable for railroad uses, it did not have the right to grant MCA an easement to use the cable for commercial telecommunications uses.

We believe IP's argument is based on a distinction without a difference. As MCI notes, if transmission of light signals cannot constitute a trespass under Arkansas law, then transmission of light signals for a particular purpose cannot constitute a trespass. We see no reason to believe that Arkansas would recognize a claim for damages from an intangible trespass of light signals. *See* W. Page Keeton et. Al., Prosser and Keeton on the Law of Torts § 13, at 71 (5th ed. 1984) ("While it is generally assumed and held that a personal entry is unnecessary for a trespass, the defendant's act must result in an invasion of tangible matter. Otherwise, there would be no use or interference with possession." (Footnote omitted)); *see also Patton v. TPI Petroleum, Inc*., 356 F. Supp. 2d 921, 930 (E.D. Ark. 2005) (describing trespass as a direct invasion by physical forces). Thus, MCI's additional use could not constitute a new or continuing trespass, even if it was beyond the scope of its easement.

*International Paper*, 442 F.3d at 636.

There are significant similarities between Missouri and Arkansas law. Like Arkansas law, Missouri courts have found that trespass involves "direct physical interference with the person or property of another." *Looney v. Hindman,* 649 S.W.2d 207, 212 (Mo. banc. 1983) (internal quotation omitted). Missouri law also similarly requires "interference with the plaintiffs' possessory rights." *Cook v. DeSoto Fuels, Inc*., 169 S.W.3d 94, 102 (Mo. Ct. App. 2005). Further, though it has not addressed light signals, the Missouri Supreme Court has ruled that a cause of action for trespass requires more than interference by noise and sound. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 454 (Mo. 2011).

The law provided by the parties thus indicates that the use of fiber-optic cables to transmit light signals would not constitute the direct physical entry necessary to establish an ordinary trespass claim. However, the Missouri case law presented by Plaintiffs does provide

another avenue for bringing a trespass claim, based on a theory that Defendants have exceeded their usage rights provided for in the easement. As a Missouri court stated:

> One can commit the tort of trespass either by unauthorized entry on land or by exceeding the scope of any license to enter upon the land. *Likewise, if the user of an easement exceeds his or her usage rights in either manner or extent, the user becomes a trespasser to the extent of the unauthorized use.*

*Ogg v. Mediacom, L.L.C.*, 142 S.W.3d 801, 809 (Mo. Ct. App. 2004) (emphasis added).

Plaintiffs also point to an earlier Missouri case which suggested that a trespass may be found even where there was no new physical entry, as long as the easement was now being used for an unauthorized purpose. This case, *St. Louis, Iron Mountain & S. Ry. Co. v. Cape Girardeau Bell Tel. Co.*, 114 S.W. 586, 588 (Mo. Ct. App. 1908), was a suit between two railroads and a telephone company. Each of the railroads had a railroad easement on the same property. *Id.* at 586. One of the railroads licensed the installation of a telephone line on the easement, and the second railroad sued for an injunction. *Id.* The court ruled that the plaintiff holding only a railroad easement had no cause for complaint because its rights were not infringed. *Id.* at 588. However, in this discussion, the court compared the rights of easement holders with the rights of fee holders, stating:

> There is still another class of cases in some respects resembling the one now under consideration. In this class the railroad right of way consists of an easement only, as here, the fee thereto residing in the adjacent landowner, and the telegraph is constructed thereon under a contract with the railroad company for the purpose of serving the railroad in its operations; but for the purpose, as well, on the part of the telegraph company, to serve the general public as a commercial enterprise. Under such circumstances, where the adjacent owner of the fee has asserted

17

a right, it is declared that, in so far as the telegraph company serve the purpose of the railroad, its occupancy of the right of way easement is not an additional servitude or burden upon the fee of which he may complain. . . . *Nevertheless, in so far as the telegraph or telephone company thus rightfully occupying the right of way serves the general public as a commercial enterprise, distinct from the avocation of the railroad, it constitutes a use of the right of way easement other than for railroad purposes, and it is therefore a servitude not contemplated in the original grant and a burden upon the fee of which the adjacent owner may rightfully complain.* It is obvious the transmission of intelligence by means of electricity to all the world who may be willing to pay for the service is not a railroad use, and such service is certainly not contemplated within the grant of the railroad right of way, for it is entirely disassociated therefrom.

*Id.* at 588 (emphasis added).

Sho-Me argues that this language is to be dismissed as dicta; however, even if it not the holding, the passage directly addresses how the rights of fee owners are to be treated when an easement holder exceeds the usage rights conferred to it under its easement. Though the case is old, it involves telegraph technology, the precursor to modern telecommunications technology, and its passage on the rights of fee owners vis-a-vis easement and license holders has been cited with authority by Missouri courts throughout the decades. *See Kansas City v. Ashley*, 406 S.W.2d 584, 592 (Mo. 1966); *Eureka Real Estate & Inv. Co. v. Southern Real Estate & Financial Co.*, 355 Mo. 1199 (1947).[13] Plaintiffs point

---

[13] In *Eureka*, a real estate company had brought suit to quiet title to a strip of land which had been condemned as a right of way for a street railway. The railway's successor to the right of way, St. Louis Public Service Company, had permitted Defendant Union Electric Company to construct poles and lines on the right of way. A central question of the *Eureka* court was whether Defendant was using its power lines for "street railway" purposes, and directly before citing the *Cape Girardeau* passage, the court stated:

additionally to a 2006 statue which allows property owners to receive damages for expanded use of easements beyond their intended purposes. This statute provides that:

> [e]xpanded use of the property beyond that which is described in the instrument of conveyance . . . shall require either an additional condemnation proceeding in order to acquire the additional rights or by [sic] new negotiations for the expanded use of the property and appropriate consideration and damages to the current owner of the property for the expanded use.

Mo. Rev. Stat. § 523.283.1.

Sho-Me argues that this statute does not apply to Plaintiffs' claims because it was not enacted until August 2006, after the easements in this case had already been acquired. However, even if it does not apply to Plaintiffs' case, it constitutes evidence, when combined with caselaw such as *Ogg* and *Cape Girardeau,* of Missouri's intent to make cognizable claims based on violations of the manner and extent of usage rights provided by an easement. Among the definitions of "expanded use" provided for in the statute are 1) "exclusion of use by the… owner from an area greater than the area originally described" or 2) "*increased footprint* or burden greater than the footprint or burden originally described in the instrument of conveyance…" *Id.* The term "footprint or burden" is defined as a "*a different type of use or* a use presenting an unreasonably burdensome impact on the property, the landowner, or

---

the uncontradicted evidence is that Union Electric's lines over the right of way have no connection whatever with the electric lines or purposes of the street railway except that some of its poles are used as guys for the streetcar company's poles. And while the Public Service Company as the owner of the easement may permit some use of its right of way, perhaps even the construction of a power line over it, it may not create a right in excess of the title held by it, nor her a right which as against the owner of the servient estate is an additional burden or servitude upon the fee simple title.

*Eureka*, 355 Mo. 1199, at 1206 (internal citations omitted).

the activities being conducted on the property by the landowner." *Id.* (emphasis added). The statute draws an explicit distinction between uses which are simply "different" and uses which are "unreasonably burdensome," indicating that physical entry or nuisance is not required to establish a claim under the statute. When viewed in conjunction with the case law presented by Plaintiffs, the statute appears to provide a cause of action for intangible trespasses. The Eighth Circuit in *International Paper* did not point to any similar case law or statutes from Arkansas courts, and Sho-Me provides none here. Thus, without an additional showing by Defendants of Missouri law contrary to the authority discussed above, *International Paper* cannot be used to exclude a trespass claim based on use of an easement for an improper purpose in Missouri.

### 3. Declaratory and Injunctive Relief

Sho-Me also seeks to dismiss the Biffle Plaintiffs' claims for declaratory and injunctive relief. Plaintiffs seek a declaration that 1) "Defendants have no legal right to exercise dominion and control over, or to use, Electric Easement Land to construct and operate a fiber-optic-cable network for commercial-communications purposes" and 2) "Defendants have no legal right or interest in the Electric Easement Land beyond an Electric Power Easement for the limited purpose of transmitting or distributing electricity." [Doc. # 52 at 12]. Though Plaintiffs' injunctive relief is not clearly stated, it appears they seek to enjoin Defendants from operating the fiber-optic cable on Electric Easement Land and to enjoin Defendants' expansion of their commercial communications use of Electric Easement Land. [First Amended Complaint, Doc. # 52 at 14].

Whether or not to entertain a declaratory judgment action lies within the sound discretion of the district court. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Relief is appropriate in cases where it could be of "some practical convenience to the parties." *See Larson v. Gen. Motors Corp.*, 134 F.2d 450, 453 (2d Cir. 1943) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)).

Plaintiffs have not alleged that Sho-Me plans to install and operate additional fiber optic cables on their land and thus lack standing to seek declaratory or injunctive relief for future trespasses due to installations on the land of unidentified putative class members. *Salazar v. Buono*, 130 S. Ct. 1803, 1826 (2010) ("A plaintiff cannot sidestep Article III's requirements by combining a request for injunctive relief for which he has standing with a request for injunctive relief for which he lacks standing.").

Regarding Defendants' use of existing fiber-optic cables for non-electric purposes on Plaintiffs' land, the Court will allow claims for declaratory and injunctive relief. Defendants argue that injunctive relief is inappropriate because the measure of damages for a permanent trespass is designed to fully compensate a plaintiff. However, it is well recognized that the legal remedy of damages may be inadequate to compensate a landowner, given the unique nature of real property interests. *See, e.g., O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996) (reasoning that because "monetary relief fails to provide adequate compensation for an interest in real property, which by its very nature is considered unique," plaintiff would suffer irreparable harm if denied an injunction to prevent the sale of her husband's interest in homestead property). As real property interests are at issue here, the Court finds

21

that injunctive relief may be needed to provide full relief; similarly, declaratory relief could be of some practical use to the parties, even if the same issues will likely be addressed in the trespass claim. As a result, the Motion to Dismiss is denied with regards to the declaratory and injunctive claims.

### 4. Unjust Enrichment

The Sho-Me Defendants also call for the dismissal of the Biffles' unjust enrichment claim on the grounds that an express easement disallows a simultaneous unjust enrichment claim. Generally, an unjust enrichment claim is precluded when there is an express contract for the subject matter for which plaintiff seeks recovery. *See Garrett v. Cassity*, 2011 WL 3235633 (E.D. Mo. July 28, 2011). They argue that the remedy of unjust enrichment is unavailable here because the "alleged benefit conferred upon the Sho-Me Defendants–the use of fiber optics–is the subject of an express agreement in the form of an express easement." [Doc. # 74 at 19]. However, Defendants' argument sweeps too broadly. The mere presence of a written easement does not automatically exclude any unjust enrichment claim, no matter what the surrounding circumstances. As the Eighth Circuit has stated:

> We must remember that the rules of the common law, especially rules which concern forms of pleading, should never be taken beyond the reason which gave them birth. The reason for the rule that someone with an express contract is not allowed to proceed on an unjust-enrichment theory, is that such a person has no need of such a proceeding, and, moreover, that such a person should not be allowed by means of such a proceeding to recover anything more or different from what the contract provides for.

*United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603 (8th Cir. 1999).

22

Here, an unjust enrichment claim may be warranted under the circumstances of the case. First, Plaintiffs allege that Defendants have exceeded the scope of the easement rather than simply breached the easement. Such a distinction is not immaterial. If Defendants have performed actions outside the scope of the easement, then simply enforcing the easement as written may not make Plaintiffs whole. Defendants have also not provided any Missouri law which prohibits unjust enrichment claims in such circumstances.

However, even if the unjust enrichment claim were not allowed as an independent claim, Plaintiffs allege that this claim is brought as an alternative to their trespass action. Though Defendants dispute Plaintiffs' ability to bring this claim in the alternative, they have produced no Missouri case law holding that this action is prohibited. Thus, as it stands now, Defendants have failed to establish that Plaintiffs' unjust enrichment claim should be dismissed.

### D. Sho-Me's Motion to Take Judicial Notice

Sho-Me filed a Request to Take Judicial Notice [Doc. # 78] of certain facts presented in Missouri case law. It's motion, however, offered no facts to be noticed but simply presented further arguments about case law that should have been addressed in the initial briefing for the motions to dismiss. As the motion was fully briefed, the Court has considered the arguments presented, but simply as a continuation of the previous briefing. As a result, the Request is denied.

### III. Conclusion

The Motion to Dismiss and Motion to Renew filed by Defendants Sho-Me Power Electric Cooperative and Sho-Me Technologies ("Sho-Me") [Docs. ## 33 and 69] are hereby DENIED in part and GRANTED in part; the two Motions to Dismiss filed by Defendants KAMO Electric Cooperative ("KAMO") [Docs. ## 34 and 70] are hereby DENIED; Sho-Me's Request to Take Judicial Notice [Doc. # 78]; and Motion to Change Venue [Doc. # 23] are also DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 21, 2012
Jefferson City, Missouri