UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CHASE BARFIELD, et al., ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:11-cv-04321-NKL |
| ) | |
| SHO-ME POWER ELECTRIC ) | |
| COOPERATIVE, et al., ) | |
| ) | |
|     Defendants. ) | |

**ORDER**

Before the Court is Plaintiffs' Motion for Approval of Proposed Plan of Notice and of Proposed Forms of Notice, [Doc. 412]. For the reasons set forth below, Plaintiffs' motion is GRANTED except for specific amendments discussed below. The Court adopts the Parties' proposed revised scheduling order, [Doc. 411].

**I.    Background**

In July 2013, the Court certified a Rule 23(b)(3) class defined as

> All persons who own or owned land in Missouri underlying Defendants' electric-transmission lines that is burdened by an easement with either Defendant or their subsidiaries, which easement does not contain an arbitration clause, and on or in which a Defendant has licensed the fiber optic cable for commercial-telecommunication uses or has used the fiber optic cable for commercial-telecommunication uses.

[Doc. 254, at p. 34-35]. Beginning in June 2013, the Parties submitted several motions for summary judgment related to the Defendants' liability for trespass and unjust enrichment. In March 2013, the Court entered an Order finding that Defendants were liable for trespass and unjust enrichment to landowners whose land was burdened by

1

Category 1A-C easements. [Doc. 396]. The Court further concluded that Defendants were not liable for trespass and unjust enrichment to landowners whose land was burdened by Category 1D, 2A-B, and 3 easements. Due to the nature of the easements, the Court declined to determine whether liability existed as to the Category 1E easements.

Around the same time the Parties were extensively briefing their motions for summary judgment, Plaintiffs filed a motion for approval of their proposed method and form of class notice. [Doc. 307]. At the time that motion was filed and Plaintiffs' proposed notice was submitted, the Court had not determined Defendants' liability. After the Court entered its summary judgment Order in March 2014, the Court ordered Plaintiffs to submit a revised notice plan. [Doc. 406]. Plaintiffs submitted their revised notice plan, [Doc. 412], and the Sho-Me and KAMO Defendants have filed objections, [Docs. 416, 417].

Plaintiffs notice plan includes the following elements: (1) direct-mail notice to a database of individuals who receive current tax bills for the land parcels at issue in this case; (2) a published notice to reach class members not in that database; (3) an 800-number that class members can call for more information; and (4) a website with information on the class action. Plaintiffs have submitted both a proposed Short-Form Notice and a proposed Detailed Notice. [Doc. 412-1].

## II. Discussion

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort." Fed. R. Civ. Pro. 23(c)(2)(B). The notice must communicate Rule 23(c)(2)(B)(i-vii)'s requirements in clear, concise, plain language that is easy to understand. *Id.* The Sho-Me and KAMO Defendants assert several objections to Plaintiffs' proposed notice. Each of the objections is discussed in detail below.

   **A. The notices should not advise Class Members of the Court's liability determination.**

The Court's Order, dated April 10, 2014, ordered Plaintiffs to submit a revised proposed plan of notice and forms of notice in light of the Court's March 31, 2014 Order on the parties' various motions for summary judgment. Plaintiffs' revised proposed notice forms have been updated to remove outdated language indicating the Court had not yet made liability determinations. The proposed notices indicate that liability has been determined in some Class Members' favor and not in others' depending on the language in the easements. The Sho-Me Defendants argue the notices should not discuss the Court's liability determinations because such references encourage class members not to opt out and in turn, unfairly impacts the amount of potential liability for the defendant. [Doc. 417, at p. 5]. The Sho-Me Defendants argue that the Court's determination of liability prior to the notice and opt-out period "violates Rule 23's policy against 'one-way intervention.'" *Id.* at p. 4. The KAMO Defendants do not dispute the propriety of referring to liability in the notice.

"One-way intervention occurs when the potential members of a class action are allowed to await final judgment on the merits in order to determine whether participation

3

in the class would be favorable to their interests." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003). However, numerous courts have found that nothing in Rule 23 precludes a district court from exercising its discretion to address the merits of the putative class' claims before addressing class certification. *See* McLaughlin on Class Actions § 3:3 (10th ed.) (collecting cases). It follows, then, that nothing precludes a court from addressing the merits of the claims before putative class members have had the opportunity to opt out.

"[A] defendant can waive any objection to a decision on the merits prior to, or simultaneous with, a decision on class certification." *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 45 (W.D. N.Y. 2009). "Such a waiver may be express or implied, such as where the *defendant* moves for summary judgment prior to class certification." *Id.* (emphasis in original) (internal citations omitted). The Sho-Me Defendants filed multiple motions to dismiss and motions for summary judgment before Plaintiffs filed for certification, before the class was certified, and before Plaintiffs filed their initial proposed notice plan and now claim the Court should not have ruled any of those motions prior to the end of the opt-out period, which was scheduled to be April 1, 2014. Plaintiffs filed their Motion to Certify in February 2013. [Doc. 146]. Prior to that time, in January, March, and July 2012, Sho-Me filed two motions to dismiss and a motion for summary judgment. [Docs. 33, 69, 88]. After Plaintiffs' Motion to Certify but before the Court's certification order in July 2013, the Sho-Me Defendants filed another motion for summary judgment in June 2013. [Doc. 239]. After Plaintiffs filed their initial motion for notice approval, [Doc. 260], the Sho-Me Defendants filed four more motions for

4

summary judgment in October 2013. [Docs. 296-299]. The Sho-Me Defendants argue that despite filing these motions, they did not "consent to the Court deviating from the Scheduling Order" which stated that "rulings on dispositive motions were slated to occur *after* the opt-out period expired." [Doc. 417, at p. 5]. The Scheduling Order in place at the time the Sho-Me Defendants filed their motions for summary judgment in October 2013 stated that "All dispositive motions will be filed by April 4, 2014 and will be ripe for ruling by May 8, 2014." [Doc. 288]. The deadline to file dispositive motions was April 4, 2014, and any outstanding dispositive motions were to be fully briefed by May 8. It did not mean the Court must delay ruling on motions (filed as early as June 2013) for almost a year. Therefore, the Sho-Me Defendants have waived their one-way intervention argument. Nonetheless, even if Defendants did not expressly consent to a liability determination prior to the opt-out period deadline, "numerous courts have extended the [waiver] exception beyond the purely consensual situation . . . to include instances where defendants implicitly waive the protections of the rule against one-way intervention by attempting to obtain a favorable decision on the merits." *Williams v. Lane*, 129 F.R.D. 636, 647 (N.D. Ill. 1990).

Further, Plaintiffs' proposed notice will not unduly prejudice the Sho-Me Defendants. The Detailed Notice states, for example, that "The Court has already made a decision that Defendants have trespassed on certain landowners land and that Defendants were unjustly enriched but the Court has not decided the amount of any damages." [Doc. 412-1]. The Notice does not give specifics of the liability determination and makes it clear in multiple places that Class Members may not be entitled to any money at all. The

Detailed Notice also states no damages determination has been made and that Plaintiffs' damage calculation method is disputed by Defendants. Accordingly, Plaintiffs' mention of the Court's liability determination in their proposed Short-Form and Detailed Notices complies with the requirements of Rule 23(c)(2).

**B. Class notice should be defendant-specific.**

Plaintiffs' propose to use the same Detailed and Short-Form Notices to notify both owners of land burdened by KAMO easements and owners of land burdened by Sho-Me easements. KAMO argues the claims against the KAMO and Sho-Me Defendants are "entirely separate," and a unified notice will confuse readers because the claims against each Defendant begin on different dates. [Doc. 416, at p. 3-4]. Sho-Me argues a unified notice "will give recipients the inaccurate impression that a cause of action is being asserted against KAMO by class members with property under Sho-Me's lines" and vice versa. [Doc. 417, at p. 6]. Plaintiffs argue unified notice is the most efficient and cost effective method and that unified notice is appropriate because owners of three stretches of land at issue in this case may have claims against both sets of Defendants. [Doc. 418, at p. 2-3]. Plaintiffs' class action notice expert, Dr. Shannon Wheatman, believes unified notice is the most appropriate form of notice. [Doc. 307-1, at p. 6-7].

After review of the proposed Detailed and Short-Form Notices, the Court concludes that the Plaintiffs' proposed unified notice is the "best notice that is practicable under the circumstances." Fed. R. Civ. Pro. 23(c)(2)(B). Both the Detailed and Short-Form notices make it clear that a Class Member will likely only have a claim against the Defendant who has an easement on the property. The Short-Form Notice states, "KAMO

and Sho-Me each have their own fiber-optic systems. Most landowners will have a claim against only one of the two." [Doc. 412-1, at 22]. The Detailed Notice states, "The Sho-Me Defendants and the KAMO Defendants each have their own fiber-optic cable systems. Although the systems interconnect in places, most landowners will have a claim against only one of the two sets of Defendants." *Id.* at p. 5. The notices are also careful to use the phrase "Sho-Me or KAMO" instead of "Sho-Me and KAMO" in key places where confusion may occur. *See e.g.* [Doc. 412-1, at p. 1] ("But you'll keep your right to sue the Sho-Me Defendants or the KAMO Defendants separately over the claims in this case."); *Id.* at p. 8 ("But if you would like to know whether you have an electric easement on your property that is owned either by Sho-Me or KAMO, it should be indicated in the public records for your property."). The notice also clearly explains that the claims against each set of Defendants starts on a different date. *Id.* at 5, 22.

Further, there are significant stretches of land where a landowner may have a claim against both the Sho-Me and KAMO Defendants, including a 200-mile stretch of land used by the University of Missouri for telecommunication purposes. KAMO argues the 200-mile stretch of land should not be considered by the Court as proof of overlapping claims in support of unified notice because less than five percent of the easements burdening that stretch of land are easements belonging to Categories 1A-C – the easements that do not permit use for commercial telecommunication purposes. [Doc. 416, at p. 3]. However, all class members, whether or not their easements permit commercial telecommunication use or not, are entitled to notice under Rule 23. Further, Defendants' assertion that less than five percent of the easements belong to Categories

7

1A-C is unsupported by any evidence. KAMO did not submit declarations, affidavits, or any kind of easement record in support of their contention. Plaintiffs' proposed unified notices are the best notices practicable, and therefore, the Court declines to adopt Defendants' proposal for separate notices.

The KAMO Defendants request that if a unified notice is adopted, the Short-Form Notice be amended to mirror the Detailed Notice by listing the Sho-Me Defendants first. [Doc. 416, at p. 4]. Neither the Sho-Me Defendants nor Plaintiffs argued against this amendment. Plaintiffs are ordered to amend the Short-Form Notice by listing the Sho-Me Defendants before the KAMO Defendants.

### C. The notices should advise Class Members of the potential impact of this lawsuit.

Both the Sho-Me and KAMO Defendants argue the proposed notices are deficient because they do not inform Class Members that participation in this class action may conflict with other interests they have. [Doc. 416, at p.9]; [Doc. 417, at p. 5]. The Sho-Me Defendants argue Class Members should be aware that this lawsuit jeopardizes the price of electricity and the availability and affordability of a host of services to local residents and businesses, including cellular telephone service, Internet access, cable television service, and services to schools, hospitals, local governments, and financial institutions. [Doc. 417, at p. 10-12]. Sho-Me proposes the following statement be added to the mailed notice:

> **This lawsuit may conflict with other interests you have.** According to the Sho-Me Defendants, the money raised from the challenged sales of fiber optic capacity is used to offset the cost of electricity paid by cooperative members, which may include you, your family, friends and

8

> neighbors. Also, according to the Sho-Me Defendants, their sales of fiber optic capacity provide high quality cellular telephone, Internet and cable TV service in rural areas, as well as high-capacity Internet access for rural schools, hospitals and clinics, businesses and public institutions. If, as a result of this lawsuit, it becomes financially infeasible for the Sho-Me Defendants to continue selling the capacity, anyone who now benefits from having those services will run the risk of losing those services or paying more for alternative service, according to the Sho-Me Defendants. Also, cooperative members may have to pay more for their electricity. The Class Representatives dispute all of the statements of the Sho-Me Defendants in this paragraph.

*Id.* at p. 9-10, note 7.

The "best notice practicable" must

> contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member. . . . Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action. The standard then is that the notice required by subdivision (c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). Sho-Me's proposed amendment does not contain information that is useful or necessary for a Class Member to decide whether he or she should opt out of the lawsuit. On the contrary, the proposed amendment is misleading because it implies that by opting out of the lawsuit, a Class Member will be insulated from the potential consequences of the lawsuit, including increased energy prices and decreased availability of services. A Class Member who opts out may still face increased prices and decreased availability of services contemplated by the Sho-Me Defendants due to participation by other Class

9

Members in the lawsuit. Perhaps the potential consequences of the lawsuit are relevant to whether there should be a lawsuit at all, but Sho-Me's proposed amendment is not reasonably necessary to assist a Class Member in deciding whether to opt out. Therefore, the Court will not include Sho-Me's proposed language.

**D. Section 1 of the Detailed Notice should reflect that the alternative damage claims remain at issue.**

Section 1 of the proposed Detailed Notice states, in part: "The Court has already made a decision that Defendants have trespassed on certain landowners land and that Defendants were unjustly enriched but the Court has not decided the amount of any damages." [Doc. 412-1, at p. 7]. The KAMO Defendants argue the sentence should be amended to state:

> The Court has already made a decision that Defendants have trespassed on certain landowners land and, in the alternative, that Defendants were unjustly enriched. Plaintiffs have not selected which alternative claim they will use to prove damages and the Court has not decided the amount of any damages.

[Doc. 416, at p. 4-5]. The KAMO Defendants argue the amendment is necessary to emphasize both that Plaintiffs have not elected which remedy they will pursue and that the Court has not yet ruled on liability for any amount of damages. Plaintiffs argue the amendment makes the notice "more impenetrable to lay persons" and that Class Members seeking more detail can learn about the alternative damage theories in the Court's summary judgment order.

The Court agrees with Plaintiffs' proposed language. Legalistic language about alternative theories of liability and Plaintiffs' selection of what alternative theory it will

10

pursue at trial is not consistent with Rule 23(c)(2)(B)(i-vii)'s requirements of clear, concise, plain language that is easy to understand. Plaintiffs' proposed language clearly informs Class Members that the amount of damages has not been decided and that Class Members may not be entitled to money. [Doc. 412-1 at p. 5, 9, 11]. Accordingly, Plaintiffs' proposed language in Section 1 is appropriate and does not require amendment.

### E. Section 2 of the Detailed Notice should reflect that the case will not change the Defendants' physical use of Class Members' property.

Section 2 of the proposed Detailed Notice states, in part: "Plaintiffs do not challenge Defendants' right to install or use the fiber-optic cables for electric purposes. There are no claims for physical property damage relating to the installation or maintenance of the cables." [Doc. 412-1, at p. 7]. The KAMO Defendants request that the notice more clearly inform Class Members that Plaintiffs are not seeking damages based on installation or maintenance of the fiber optic cables or any physical damage to Class Members' property as a result of those activities. The KAMO Defendants propose the following amendment to the proposed Detailed Notice: "The Plaintiffs are not seeking to have KAMO's fiber-optic cables removed from Class Members' land or to stop KAMO from entering Class Members' land to maintain those cables." [Doc. 416, at p. 6]. Plaintiffs argue the amendment is not necessary because their language adequately informs Class Members that the lawsuit is not about the installation of the cables. Plaintiffs further argue KAMO's language is inaccurate because Plaintiffs do dispute

11

KAMO's right to enter the land and maintain the cables for commercial telecommunication purposes.

Based on the Parties' arguments, a compromise can be reached. The sentences in Section 2 which state "Plaintiffs do not challenge Defendants' right to install or use the fiber-optic cables for electric purposes. There are no claims for physical property damage relating to the installation or maintenance of the cables." shall be amended to state "Plaintiffs do not challenge Defendants' right to install, use, or maintain the fiber-optic cables for electric purposes. There are no claims for physical property damage relating to the installation or maintenance of the cables. The Plaintiffs are not seeking to have the Defendants' fiber-optic cables removed from Class Members' land."

**F. Section 3 of the Detailed Notice need not reference pleadings under seal.**

Section 3 of the proposed Detailed Notice states, in part: "The Defendants' and Plaintiffs' pleadings and certain court rulings in this case, are available at www.MissouriClass.com." The KAMO Defendants argues the sentence is too broad because certain pleadings filed by the Parties were filed under seal, and therefore, Class Members cannot be given full access to all the pleadings or exhibits. [Doc. 416, at p. 6-7]. Plaintiffs do not oppose omitting the summary judgment briefs from the website and propose that only the following, unsealed documents be available on the website: (1) Amended Complaint [Doc. 52], (2) the Sho-Me Defendants' Answer [Doc. 85], (3) the KAMO Defendants' Answer [Doc. 86], (4) June 21, 2012 Order [Doc. 81], (5) April 15, 2013 Order [Doc. 187], (6) July 8, 2013 Order [Doc. 246], (7) July 25, 2013 Order [Doc. 254], and (8) March 31, 2014 Order [Doc. 396]. Because these documents do not

encompass all the Parties pleadings, the sentence in Section 3 which states "The Defendants' and Plaintiffs' pleadings and certain court rulings in this case, are available at www.MissouriClass.com." shall be amended to state "Certain pleadings filed by the Defendants and Plaintiffs and certain court rulings in this case are available at www.MissouriClass.com." It is further ordered that the documents described above, [Docs. 52, 85, 86, 81, 187, 246, 254, and 396], be available to Class Members through the class website.

**G. Section 11 of the Detailed Notice should advise the Class Members about how their potential recovery may vary**.

Section 11 describes how the amount of damages will be determined if damages are awarded. Section 11 states, in part:

> For Class Members who have the right to recover money in this case, the Class Representatives believe that damages should be measured in a uniform amount per month for each foot of the land where the fiber-optic cable was installed and used for commercial telecommunications. This would mean that each Class Member would recover the same monthly "per foot" amount, regardless of where his or her property is located or how it is valued for other purposes. Defendants deny that any money should be awarded. They also argue that the monthly "per-foot" approach is not the correct way to measure damages even if money damages are appropriate."

[Doc. 412-1, at p. 10]. The KAMO Defendants argue that Class Members should be informed of Defendants' proposed damage calculation theory which is based on the "before and after" market value of Class Members' land. KAMO proposes the following amendment:

> Defendants deny that any money should be awarded. They also argue that the monthly "per-foot" approach is not the correct way to measure damages even if money damages are appropriate. The KAMO Defendants argue that

13

damages should be based on the difference between the fair market value of Class Members' property before and after the alleged trespass.

[Doc. 416, at p. 7]. Plaintiffs argue the proposed amendment which attempts to contrast Defendants' damage theory from Plaintiffs' damage theory is not accurate because Plaintiffs' theory is also based on a "before and after" value.

Neither Plaintiffs' nor Defendants' damage theories should be included in the notice. In order to have a notice that Class Members can understand and use to determine whether they wish to remain in the lawsuit, the notice must be clear and in plain language. Legal theories the Parties hope to advance in favor of one damage determination over another is not information reasonably necessary to a Class Member and may only serve to confuse Class Members. What is relevant to a Class Member is that the Court has not determined the amount of any damages and that by remaining in the lawsuit, a Class Member may receive no money at all. Both of these facts are clearly communicated in the notices. Therefore, Section 11 shall be omitted entirely from Plaintiffs' proposed Detailed Notice.

### H. Who should bear the cost of notice?

Plaintiffs argue in their Motion for Approval of Class Notice that because the Court has determined Defendants are partially liable for trespass and unjust enrichment, Defendants should bear the costs of notice. [Doc. 412, at p. 7]. Both the KAMO and Sho-Me Defendants object. The KAMO defendants argue the Court should follow the normal rule that requires the party seeking certification to bear the cost of notice because there is no indication Plaintiffs will ultimately prevail on damages. [Doc. 416, at p. 8].

14

The Sho-Me Defendants argue that they did not consent to the Court deciding liability before giving class members an opportunity to opt out and that Plaintiffs have not shown any exceptional hardship they would suffer by initially bearing notice costs. [Doc. 417, at p. 10-11].

"The usual rule is that a plaintiff must initially bear the cost of notice to the class." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978) (The general rule must be that the representative plaintiff should perform the tasks, for it is he who seeks to maintain the suit as a class action and to represent other members of his class. . . . Thus ordinarily there is no warrant for shifting the cost of the representative plaintiff's performance of these tasks to the defendant."). The district court has some discretion in allocating the cost of complying with an order concerning class notification, and some district courts have shifted notice costs once the defendant's liability has been established. *See Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009) (citing district courts who have shifted notice costs to the defendant); *see also* Newberg on Class Actions § 8:33 (5th ed.) (describing four situations where district courts have shifted notice costs to the defendant: where costs would be substantially reduced if defendant issued the notice, when there is an existing fiduciary relationship between the parties, when the defendant is the party requesting certification, and when there has been some preliminary finding of the defendant's liability).

The Court declines to shift notice costs to Defendants at this time, subject to reconsideration of the possible benefits gained by Defendants of disseminating notice to

all Class Members, including those whose land is burdened by an easement that permits use for commercial telecommunication purposes (Category 1D, 2A-2B, and 3 easements). While the Court has determined that Defendants are liable for trespass and unjust enrichment in certain instances, the Court also determined Defendants were not liable in others, and Plaintiffs' notice plan seeks to notify all potential Class Members regardless of whether their land is burdened by one of the easements that does not permit use for commercial telecommunications purposes. Though Plaintiffs argue the notice costs are substantial, Plaintiffs have not argued that they would suffer significant hardship by initially bearing the notice costs. *See H.W. Urban GmbH v. Republic of Argentina*, 2006 WL 587333, at *3 (S.D. N.Y. 2006) ("While plaintiff has obtained partial summary judgment as to liability, it has not shown any special duty owed by the Republic or any exceptional hardship it will suffer by initially bearing the (currently modest) costs of class notice, which are typically borne by plaintiffs at this stage in a class action.").

With the exception of minor amendments in Sections 2, 3, and 11 and an amendment to the Short Form Notice to name the Sho-Me Defendants before the KAMO Defendants, Plaintiffs' proposed notice plan and forms of notice satisfy the requirements of Rule 23. Specifically, the proposed notices contain all of the content required by Rule 23(c)(2)(B) and Plaintiffs' proposed method of distributing satisfies Rule 23(c)(2)'s requirement that the class members receive the best notice practicable under the circumstances. Accordingly, it is hereby ORDERED that Plaintiffs' Motion for Approval

of a Revised Plan of Notice and Revised Proposed Forms of Notice, [Doc. 412], is GRANTED, except for the amendments required above.

### III. Revised Scheduling Order

The Court ordered the Parties to submit a revised scheduling order to address notice and opt-out deadlines consistent with the trial date set for September 22, 2014. Having reviewed the Parties' proposed, revised scheduling order, the following scheduled is established:

**Class notice and opt-out deadlines**

1. July 1, 2014 – Direct mail of long-form notices to be mailed.
2. On or before July 15, 2015 – Publication notices to be issued.
3. September 8, 2014 – Opt-out deadline.

**Other deadlines**

1. On or before June 6, 2014 – Plaintiffs to identify substitute class representative(s) to replace Chase Barfield for claims as to the KAMO Defendants.
2. On or before June 20, 2014 – Plaintiffs to propose amendments to pleadings to add new class representative and provide discovery responses to Defendants.
3. On or before July 11, 2014 – Defendants may depose new class representative and be given opportunity to inspect new class representative's property.
4. On or before July 25, 2014 – Defendants to file answer to any new pleading allegations relating to the new class representative and to issue any amendments to expert reports in light of new class representative; KAMO

17

Defendants to file any motion contesting the adequacy of the new class representative.

5. On or before August 1, 2014 – Plaintiffs to file opposition brief to any KAMO Defendants' motion contesting adequacy of new class representative.

6. On or before August 8, 2014 – KAMO Defendants to file reply brief on adequacy of class representative.

**IV.    Conclusion**

For the reasons set forth above, Plaintiffs' Motion for Approval of a Revised Plan of Notice and Revised Proposed Forms of Notice, [Doc. 412], is GRANTED, except for the specific amendments required above. The Court adopts the Parties' proposed, revised scheduling order, [Doc. 411].

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 14, 2014
Jefferson City, Missouri