UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| CHASE BARFIELD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cv-04321-NKL |
| | ) | |
| SHO-ME POWER ELECTRIC | ) | |
| COOPERATIVE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is a discovery dispute between Plaintiffs and the KAMO Defendants regarding whether certain documents partially or entirely withheld by the KAMO Defendants are protected by the attorney-client privilege.[1] KAMO submitted the contested documents to the Court for an *in camera* review. The types of documents included in the dispute include letters from multiple attorneys to KAMO executives, email correspondence, and minutes from meetings held by KAMO's Board of Directors and various subcommittees. The letters and emails were withheld entirely, while the board minutes were produced in redacted form.

**I.     Discussion**

The attorney-client privilege attaches to: 1) Information transmitted by voluntary act of disclosure; 2) between a client and his lawyer; 3) in confidence; and 4) by a means

---

[1] The privilege logs submitted to the Court concerning the contested documents list both the attorney-client and work-product privileges as reasons why the information should not be disclosed. However, the Court has held two teleconferences over the disputed documents and neither party has raised any argument relating to the work- product privilege. Therefore, the Court will not consider whether any of the documents are protected by the work-product privilege.

1

which, so far as a client is aware, discloses the information to no third parties other than those reasonably necessary for the transmission of the information or for the accomplishment of the purpose for which it is to be transmitted. *State v. Longo*, 789 S.W.2d 812, 815 (Mo. Ct. App. 1990). An attorney-client relationship is established when a prospective client seeks and receives legal advice and assistance from an attorney who intends to provide legal advice and assistance to the prospective client. *Polish Roman Catholic St. Stanislaus Parish v. Hettenbach*, 303 S.W.3d 591, 601 (Mo. Ct. App. 2010). In determining whether the legal advice and assistance of an attorney is sought and received, courts look to the substantive nature of the contacts within the relationship, regardless of what formal or procedural incidents have occurred. *Id.* (citing *McFadden v. State,* 256 S.W.3d 103, 107 (Mo. banc 2008)).

### A. Letters to KAMO from various attorneys

The first category of documents at issue is a series of letters to KAMO executives, Daymon Barton or Chris Cariker, from attorneys Sean Burrage, Stratton Taylor, Craig Johnson, or Donald Nevard. The documents at issue, which were withheld entirely, are KCF0013979 and KCF0013986. The letters identify legal issues and questions asked by KAMO executives and provide advice on actions KAMO should take. There is no doubt the content of these letters is legal advice given at the request of KAMO executives. However, Plaintiffs argue the letters are not protected by the attorney-client privilege because the KAMO Defendants have failed to prove there was an attorney-client relationship between the attorneys rendering the advice and KAMO. In support of this argument, Plaintiffs cite to *Mid-Continent Cas Co. v. Daniel Clampett Powell &*

*Cunningham, LLC*, 196 S.W.3d 595 (Mo. Ct. App. 2006), for the proposition that belief in an attorney-client relationship alone is insufficient to create such a relationship.

In *Mid-Continent Cas Co.*, the plaintiff, one of three companies in an informal conglomeration, paid the settlement costs for litigation between a second of the three companies and a third parties. The plaintiff thereafter sued the second company's attorney for legal malpractice. The attorney denied that an attorney-client relationship existed between him and the plaintiff company. In support of its contention that an attorney-client relationship existed, the plaintiff claimed that the attorney had listed it as a client in a legal directory, that the plaintiff had paid the attorney's fees, that the attorney reported on the litigation to the plaintiff, that the plaintiff's employees believed a relationship existed, and that the attorney was performing a service intended by the second company to benefit the plaintiff. *Id.* at 598-99. In concluding that no attorney-client relationship existed between the attorney and the plaintiff, the Missouri Court of Appeals remarked that the plaintiff presented no facts to support a finding that it received legal advice or assistance from the attorney or that the attorney intended to provide such advice or assistance on the plaintiff's behalf. *Id.* at 598. Belief that a relationship existed was insufficient, particularly in light of the record which demonstrated the attorney was hired to fulfill the second company's legal needs and the lack of evidence to support a finding that the plaintiff had the same legal needs. *Id.* at 599.

This case is distinguishable. Each attorney, or a representative from that attorney's firm (where multiple attorneys from the same firm represented KAMO), submitted an affidavit stating the time period he entered into an attorney-client

3

relationship with KAMO and stating that all appearances, presentations, and information provided to KAMO were in the context of an attorney-client relationship. Further, the documents at issue clearly relay legal advice and establish that KAMO sought and received legal advice from various attorneys who intended to provide legal advice in a particular manner.[2] Unlike the plaintiff in *Mid-Continent Cas. Co.*, there is evidence of a direct attorney-client relationship between KAMO, Burrage, Taylor, Johnson, and Nevard, all of whom agree a relationship existed. Therefore, KCF0013979 and KCF0013986 are protected from disclosure by the attorney-client privilege.

### B. Emails regarding proposed legislation

The next category of documents is a series of emails regarding amendments to proposed legislation. The documents at issue, which were withheld entirely, are KCF0014095, KCF0014097, KCF0014098, KCF0014101, KCF0014102, KCF0014109, KCF0014110, KCF0014111, KCF0014117, KCF0014118, and KCF0014119. Before discussion on the privileged status of these documents, however, a brief explanation of the relationship between the parties involved in the email communications is necessary.

KAMO is one of several members of the Association of Missouri Electric Cooperatives (AMEC), a trade association for Missouri's electric cooperatives. Chris Cariker, KAMO's CEO, is a member of AMEC's board of directors, which is comprised of representatives from AMEC's electric cooperative members. Attorney Pat Baumhoer

---

[2] For instance, KCF0013979 begins, "Dear Daymon: This letter is written pursuant to your request to briefly summarize the legal issues that you and I have discussed regarding . . . ." A second letter in KCF0013979 begins, "Dear Daymon: This is a follow-up to the conversation we had at the recent board meeting. We have done a great deal of research . . . and would offer the following observations . . . ." Similarly, KCF0013986 begins, "Dear Mr. Cariker: This office is in receipt of your request for guidance as it relates to . . . ."

serves as corporate counsel of AMEC. In 2012, the Missouri legislature was considering legislation which could affect AMEC members. AMEC's CEO asked Baumhoer "to work with AMEC members regarding proposed legislation, including communicating with AMEC members regarding the language of the bill and any proposed revisions to the bill and answering any questions they may have." Baumhoer Aff. ¶ 14. The emails at issue are communications between Baumhoer, Cariker, and other AMEC board members (KCF0014095, KCF0014110) and emails between Baumhoer, Cariker, and KAMO's outside counsel (KCF0014098, KCF0014101, KCF0014117, KCF0014118, and KCF0014119). *Id.* at ¶¶ 15-16.

Plaintiffs first argue that no attorney-client relationship existed between Baumhoer and KAMO. As to the emails between Baumhoer, Cariker, and other AMEC board members and staff, it is clear an attorney-client relationship existed regardless of whether there was a separate relationship between KAMO and Baumhoer. Rule 4-1.13 of the Supreme Court of Missouri's Rules of Professional Conduct specifically addresses who an attorney represents when an organization or association is his or her client. Comment 2 of Rule 4-1.13 states, "When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected . . . . This does not mean, however, that constituents of an organizational client are the clients of the lawyer." *See also* ABA Mod. Rule of Prof. Cond. 1.13. The email communications illustrate that Baumhoer was to author amendments to the proposed legislation on behalf of AMEC and its members. He then sent draft amendments to AMEC board members and invited the board members to ask

5

questions or give suggestions. The emails also convey a sense of confidentiality. For example, in KCF0014095, Baumhoer states, in part, "Current status is not to show to anyone unless David determines it would be a good idea." Baumhoer also submitted an affidavit stating that in the context of the emails with Cariker and other AMEC board members, he was serving as AMEC's corporate counsel. Rule 4-1.13 makes it clear that communications between Cariker and Baumhoer in Cariker's role as a board member of AMEC are privileged.

The outcome is the same for the emails between Baumhoer and Cariker and Baumhoer, Cariker, and KAMO's outside counsel. While KAMO has not provided sufficient evidence to prove that it was an independent client of Baumhoer,[3] Baumhoer's communications with Cariker are still privileged because they are communications with Cariker in his organizational capacity as a board member of AMEC. Baumhoer instructed AMEC's board members to review the proposed amendments and to offer suggestions and questions. The communications from Cariker and KAMO's counsel regarding the amendments appear to be responses to Baumhoer's invitation. KAMO concedes that due to the nature of Cariker's role in AMEC and his job as KAMO's CEO,

---

[3] The Missouri Court of Appeal's decision in *Multilist Serv. of Cape Girardeau, Missouri, Inc. v. Wilson*, 14 S.W.3d 110 (Mo. Ct. App. 2000) is instructive. In *Multilist Serv.*, members of a corporation sued the corporation's attorney for malpractice. The attorney claimed that no relationship existed between him and the individual members. The Missouri Court of Appeals agreed. The court concluded that the attorney's discussions with the members regarding pending litigation, his attendance at various meetings, his advice to specific members, and letters he wrote expressing the legality of what the corporation was doing were consistent with his duty to represent the corporation, and not the individual members. *Id.* at 114. The attorney necessarily had to discuss legal matters with members, as a corporation is an artificial entity which must act through an agent. Baumhoer's communications with Cariker and other board members are not consistent with individual representation of the members, but rather, consistent with his role as AMEC's corporate counsel. Baumhoer was asked by AMEC's CEO, not KAMO's CEO, to work with AMEC members regarding the proposed legislation. His work with the members was in furtherance of his representation of AMEC.

Cariker was often wearing both an AMEC board member and AMEC member/KAMO hat when communicating with Baumhoer. However, the privilege is not waived merely because Cariker was also a representative of KAMO at the same time he was a board member of AMEC. To require Cariker to separate those roles is impractical in light of the fact that his membership on AMEC's board is a direct result of his role as CEO of KAMO, a member of AMEC.

Plaintiffs also argue that even if an attorney-client relationship existed, advice regarding lobbying is not privileged. In support of this argument, Plaintiffs cite to *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, 2011 WL 1136440 at *3 (W.D. Mo. 2011) (hereinafter *BPA Litigation*), where this Court held that advice regarding lobbying, public relations, and dealing with the media were non-privileged matters. This case is distinguishable from *BPA*. In *BPA Litigation*, the Court found that a list provided by an attorney of legislative activity undertaken by a variety of governmental entities around the country did not involve legal advice or analysis. *Id.* Other emails found to contain non-privileged information included comments of lobbyists regarding legislative action, a publicity/lobbying campaign proposal, communications regarding lobbying efforts, and lobbying – as opposed to legal – strategy. The communications at issue in this case rise above a mere regurgitation of recent legislative actions or lobbying efforts and proposals and more closely resemble legal advice and analysis. The emails contain drafts of amendments to proposed legislation, why certain amendments were made, how the amendments might legally

7

affect electric cooperatives, and interpretation of the meaning of the proposed legislation and who it would affect.

Because there is sufficient evidence of an attorney-client relationship between Cariker in his role as an AMEC board member and Baumhoer and because the communications contain privileged information, the following documents are protected from disclosure: KCF0014095, KCF0014097, KCF0014098, KCF0014101, KCF0014102, KCF0014110, KCF0014111, KFC0014118, and KCF0014119. KCF0014109 is a blank document and is not protected by the attorney-client privilege. KCF0014117 is a series of emails between Chris Cariker and Pat Baumhoer regarding the status of the proposed bill in the Missouri legislature. This communication does not contain legal advice or analysis and is therefore, not privileged information. KCF0014109 and KCF0014117 must be disclosed to Plaintiffs.

### C. Board meeting minutes and packets

The last category of documents is board meeting minutes and packets from the KAMO Board of Directors, the KAMO Technical Advisory Committee, or the KAMO Telecommunications Subgroup Committee. These documents were produced to Plaintiffs in redacted form, but Plaintiffs seek the un-redacted versions.

**KAMO-0037334**[4]

---

[4] The privilege log identifies the redacted document number as a range of pages that encompass an entire board meeting document rather than the specific page where the redacted information is located. Rather than listing the entire page range, the Court will address the specific document number where the alleged privileged information is located. For example, KAMO's privilege logs list KAMO-0037328-36 as a privileged document, but only KAMO-0037334 contains alleged privileged material. The Court will refer to KAMO-0037334.

KAMO-0037334 is a communication by Chris Cariker to the KAMO Board of Directors regarding a lawsuit. KAMO has not met its burden of proving the information communicated by Cariker was legal advice given to him by KAMO's counsel. There is mention in the minutes of KAMO's plan to work with the law firm Andereck Evans, but there is no indication in the minutes that anything Cariker stated was legal advice from an attorney or what attorney, if any, gave him advice. A statement in the privilege log that Cariker was "relaying legal advice given by KAMO's counsel" is, without more, insufficient to establish that the information was privileged. KAMO-0037334 is not privileged and must be produced in un-redacted form.

**KAMO-0037469**

KAMO-0037469 is a communication by KAMO's Chief Operations Office. He is relaying legal advice provided by the firm Ewing & Hoberock regarding condemnation and rights to install fiber under Missouri law. KAMO has provided evidence of an attorney-client relationship with Ewing & Hoberock through the affidavit of Chris Hoberock. However, KAMO's redaction is too broad and attempts to protect information that is not legal advice. Therefore, KAMO must produce to Plaintiffs in un-redacted form the sentence beginning with "The second item . . . fiber."

**KAMO-0037473**

KAMO-0037473 is a communication by Pat Baumhoer regarding language used in an amendment to an agreement between KAMO and Associated Electric Cooperative, Inc. Baumhoer's affidavit and supplemental affidavit only claim representation in the context of working on proposed legislation in Baumhoer's role as corporate counsel of

AMEC. The affidavits do not state Baumhoer was retained for general advice on agreements between KAMO and Associated Electric Cooperative or that he considered communications with KAMO's board to be privileged. KAMO has failed to meet its burden of proving that KAMO-0037473 is privileged. It must be produced in un-redacted form.

**KAMO-0037562**

KAMO-0037562 is a communication by Cariker to KAMO's board regarding Oklahoma SB 408. KAMO has not met its burden of proving the information communicated by Cariker was legal advice given to him by KAMO's counsel. There is no indication in the minutes that anything Cariker stated was legal advice from an attorney or what attorney, if any, gave him advice. KAMO-0037562 is not privileged and must be produced in un-redacted form.

**KAMO-0037954**

KAMO-0037954 states that a presentation was given by an attorney and gives the title of the presentation. This statement is not legal advice or analysis and is therefore, not privileged. KAMO-0037954 must be produced in un-redacted form.

**KAMO-0038601**

KAMO-0038601 is a communication from Daymon Barton to the Technical Advisory Committee. The communication also includes legal advice from attorneys Patrick Shore, Sean Burrage, and Craig Johnson regarding corporate structure. KAMO has presented sufficient proof of an attorney-client relationship with these attorneys through the affidavits of Larry Derryberry (for Pat Shore), Stratton Taylor (for Sean

Burrage), and Craig Johnson. However, KAMO's redaction is too broad and attempts to protect information that is not legal advice. Therefore, KAMO must produce to Plaintiffs in un-redacted form the sentence "He then provided background information . . . not allowing it."

**KAMO-0038602**

KAMO-0038602 is a communication from Daymon Barton to the Technical Advisory Committee regarding corporate structure and a review of KAMO's operating agreement. KAMO has not met its burden of proving the information communicated by Barton was legal advice given to him by KAMO's counsel. There is no indication in the minutes that anything Barton stated was legal advice from an attorney or what attorney, if any, gave him advice. KAMO-0038602 is not privileged and must be produced in un-redacted form.

**KAMO-0038605**

KAMO-0038605 is a communication from attorney Tony Foster of the law firm Taylor, Burrage, Foster, Mallet, & Downs, to the Technical Advisory Committee. It is legal advice and analysis regarding formation of a limited liability company. KAMO has provided sufficient evidence to establish an attorney-client relationship existed with Foster through the affidavit of Stratton Taylor.[5] Therefore, KAMO-0038605 is privileged information.

---

[5] Foster worked for the law firm Taylor, Burrage, Foster, Mallet & Downs. Stratton Taylor submitted an affidavit stating that attorneys in the Taylor, Burrage firm were engaged in an attorney-client relationship at the time this information was conveyed by Foster. Taylor lists himself, Sean Burrage, Clinton Russell, Mark Ramsey, and paralegal Stephanie Wells as people who would have provided information or presentations to KAMO. Foster is not on this list, but the minutes state he was from the Taylor, Burrage

**KAMO-0038606**

KAMO-0038606 is a suggestion from Foster to the Technical Advisory Committee about how KAMO's Board would receive updates from a limited liability company. This communication is business advice, not legal advice, and is not privileged. *See BPA Litigation*, 2011 WL 1136440 at *7. KAMO-0035606 must be produced in un-redacted form.

**KAMO-0038663-66**

KAMO-0038663-66 contain extensive communication from attorneys Tony Foster and Chris Hoberock to the KAMO Telecommunications Subgroup Committee regarding the legality of a fiber project under Oklahoma and Missouri law. KAMO-0038663-66 is legal advice and therefore, privileged.

**KAMO-0039422**

KAMO-0039422 is a communication from a KAMO board member in a board packet regarding the formation of a subsidiary. Though the communication states that the Technical Advisory Committee "received guidance regarding legal aspects from an attorney," no information on that attorney was provided and no advice was documented in the minutes. KAMO has not met its burden of establishing that KAMO-0039422 contains privileged information. KAMO-0039422 must be produced in un-redacted form.

**KAMO-0039618**

---

firm, and Taylor specifically states that the list of attorneys is without limitation. It appears Foster was only inadvertently left out of the specific list provided by Stratton Taylor.

KAMO-0039618 is a minute entry from the KAMO Technical Advisory Committee which was included in a KAMO board packet. The minute entry states that the Technical Advisory Committee received legal opinions from various law firms about the legality and risks of certain actions. The minutes only state the subject matters that were covered, not the legal advice or analysis given. This summary is not privileged information. KAMO-0039618 must be produced in un-redacted form.

**KAMO-0041462**

KAMO-0041462 is a summary of a communication by Cariker to the KAMO board. Cariker discussed Oklahoma SB 408 and how it relates to attaching fiber-optic cable to existing transmission lines. KAMO has not met its burden of proving the information communicated by Cariker was legal advice given to him by KAMO's counsel. There is no indication in the minutes that anything Cariker stated was legal advice from an attorney or what attorney, if any, gave him advice. KAMO-0041462 is not privileged and must be produced in un-redacted form.

**KAMO-0041795-96**

KAMO-0041795-96 is a document titled "KAMO's Not-for-Profit Tax Status." It is unclear who authored the document. It contains several questions with answers, only one set of which is redacted. The document requests that any comments or concerns be directed to KAMO's Finance Committee Chairman. Although the answer to the redacted question states that "The attorneys have reported . . .," there is no indication what attorney reported the information. A vague reference to "attorneys" does not establish the existence of an attorney-client relationship. Therefore, KAMO has not met its burden

of establishing that KAMO-0041795-96 is privileged information. KAMO-0041795-96 must be produced in un-redacted form.

**KAMO-0041961**

KAMO-0041961. KAMO-0041961 contains a communication from attorney Craig Johnson to the Technical Advisory Committee regarding creation of a limited liability company. This communication is legal advice and is privileged information.

**KAMO-0044053**

KAMO-0044053 is the same document as KAMO-0037469, and, as discussed above, is privileged except the sentence "The second item . . . fiber." which must be produced in un-redacted form.

**KAMO-0044058**

KAMO-0044058 is the same document as KAMO-0037473, and is not privileged for the same reasons. KAMO-0044058 must be produced in un-redacted form.

**KAMO-0044815**

KAMO-0044815 is the same document as KAMO-0041961, which contains privileged information. However, KAMO-0044815 is redacted more extensively than the same paragraph in KAMO-0041961. Some of the redacted information in KAMO-0044815 is not legal advice, and therefore, KAMO must produce the sentence "The Committee approved . . . will address these issues." in un-redacted form.

**KAMO-0044816**

KAMO-0044816 is the same document as KAMO-0039618 and is therefore not privileged for the same reasons. KAMO-0044816 must be produced in un-redacted form.

**KAMO-0044812**

KAMO-0044812 contains information about proposed changes to various policies. These changes were submitted to attorney Sean Burrage for his review. However, KAMO-0044812 does not disclose what changes were suggested by Burrage, and therefore, does not contain legal advice. Only one sentence within the redacted information suggests a conclusion by Burrage. That sentence is privileged information. KAMO-0044812 must be produced in un-redacted form except for the sentence "Mr. Burrage . . . Policy 213."

## II.     Conclusion

For the reasons set forth above the following documents are privileged communications and protected from disclosure: KCF0013979, KCF0013986, KCF0014095, KCF0014097, KCF0014098, KCF0014101, KCF0014102, KCF0014110, KCF0014111, KFC0014118, KCF0014119, KAMO-0038605, KAMO-0038663-66, and KAMO-0041961. The following documents are not privileged and must be produced to Plaintiffs entirely in un-redacted form: KCF0014109, KCF0014117, KAMO-0037334, KAMO-0037473, KAMO-0037562, KAMO-0037954, KAMO-0038602, KAMO-0038606, KAMO-0039422, KAMO-0039618, KAMO-0041462, KAMO-0041795-96, KAMO-0044058, and KAMO-0044816. The following documents are only privileged in part, and KAMO must produce un-redacted versions of these documents consistent with the above discussion: KAMO-0037469, KAMO-0038601, KAMO-0044053, KAMO-0044815, and KAMO-0044812. Any document ordered to be produced must be produced within three days of the date of this Order.

s/ Nanette K. Laughrey
                                                NANETTE K. LAUGHREY
                                                United States District Judge

Dated:  June 9, 2014
Jefferson City, Missouri