UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CHASE BARFIELD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:11-cv-04321-NKL |
| ) | |
| SHO-ME POWER ELECTRIC ) | |
| COOPERATIVE, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

After a five day jury trial on the issue of damages, a jury returned a verdict awarding Plaintiffs $79,014,140 for claims arising out of the Sho-Me Defendants'[1] (hereinafter Sho-Me) unauthorized use of electric transmission line easements on Plaintiffs' property for commercial telecommunications purposes.

Before the Court are Plaintiffs' Motion to Require the Sho-Me Defendants to Post Adequate Security for the Judgment, [Doc. 654], Sho-Me's Renewed Motion to Stay Judgment Without Bond, [Doc. 659], Sho-Me's Alternative Motion to Approve a Letter of Credit as Security for a Stay, [Doc. 661], Sho-Me's unopposed Motion to Approve the Form of a Letter of Credit as Security for a Stay of Judgment, [Doc. 691], and the Parties' Joint Amended Motion to Approve the Form of a Letter of Credit and Escrow Agreement as Security for a Stay of Judgment, [Doc. 715]. For the reasons set forth below, Plaintiffs' Motion to Require the Sho-Me Defendants to Post Adequate Security for the Judgment, [Doc. 654], is granted in part. Sho-Me's Renewed Motion to Stay Judgment Without Bond, [Doc. 659], is denied. Sho-Me's Motion to Approve a Letter of Credit as Security for a Stay of Judgment, [Doc. 661], is granted

---
[1] Sho-Me Power Electric Cooperative and Sho-Me Technologies, LLC

1

in part. Sho-Me's Motion to Approve Form of a Letter of Credit as Security for a Stay of Judgment, [Doc. 691], is denied as moot. The Parties' Joint Amended Motion to Approve the Form of a Letter of Credit and Escrow Agreement as Security for a Stay of Judgment, [Doc. 715], is granted.

## I. Background

Sho-Me has filed post-trial motions requesting judgment as a matter of law, a new trial, and an amended judgment. [Docs. 607, 638, 695]. Both Parties have also communicated an intention to appeal aspects of this litigation to the Eighth Circuit Court of Appeals. While post-trial motions and an appeal are pending, Sho-Me requests that the Court stay enforcement of the judgment without requiring Sho-Me to post a bond or provide other security. [Doc. 659]. Alternatively, Sho-Me asks the Court to approve a letter of credit as security for a stay in the amount of $10 million but not to exceed $90 million. [Docs. 661, 691]. Plaintiffs move the Court to require Sho-Me to post adequate security for a stay. [Doc. 654]. After initially opposing Sho-Me's proposal to secure the judgment with a letter of credit, Plaintiffs now agree with Sho-Me that a letter of credit from CoBank, ACB in an amount set by the Court will serve as an adequate form of security in the place of a supersedeas bond. [Docs. 715, 691-2]. Plaintiffs request security in the full amount of the judgment plus post-judgment interest and costs.[2] *See e.g.*, [Doc. 694].

## II. Discussion

The questions before the Court are limited to whether Sho-Me is required to post any security to obtain a stay pending post-trial motions and an appeal, what amount of security is

---

[2] Plaintiffs also requested that the letter of credit secure more than $25 million in prejudgment interest, but the Court denied Plaintiffs' request for prejudgment interest. *See* [Doc. 701].

2

adequate if security is required, and whether a letter of credit from CoBank in the form approved by the Parties is appropriate.

### A. Sho-Me is Required to Post Security to Stay Enforcement of the Judgment

A court may stay the execution of a judgment – or any proceedings to enforce it – pending disposition of certain post-trial motions. Fed. R. Civ. Pro. 62(b). If an appeal is taken, the appellant may obtain a stay by posting a supersedeas bond, and the stay takes effect when the court approves the bond. *Id.* at 62(d).[3] The purpose of a bond is to secure a prevailing party from loss resulting from the stay of execution of the judgment in its favor. *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986). However, "[w]hat constitutes 'appropriate terms' is a matter left to the trial court's discretion," *Miami Int'l Realty Co.*, 807 F.2d at 873; *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 2010 WL 3167393, at *1 (E.D. Mich. 2010), and a court may grant a stay without a bond or with a partial bond. *United States v. Mansion House Ctr. Redev. Co.*, 682 F.Supp. 446, 449-50 (E.D. Mo. 1988).

Sho-Me argues an unsecured stay is appropriate because Sho-Me "can demonstrate the clear ability to satisfy the Judgment and any accumulated interest during the course of post-trial motions and an appeal." [Doc. 660, p. 7]. "[T]here is a presumption in favor of requiring a bond, and the party seeking [to] dispense with the requirement bears the burden of showing why a bond should not be required." *Newburgh/Six Mile Ltd. P'ship II*, 2010 WL 3167393, at *1; *see also United States v. Peters*, 2014 WL 4205065, at *2 (E.D. Mo. 2014). "[W]here there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case and where posting adequate security is practicable,"

---

[3] While neither Party has filed an appeal yet, the Court addresses both a Rule 62(b) and Rule 62(d) stay because the Parties have agreed that a letter of credit from CoBank will serve as adequate security for both a 62(b) and 62(d) stay and because both Parties have indicated an intention to appeal certain aspects of this litigation once Sho-Me's post-trial motions are resolved by this Court.

3

a full bond is appropriate. *Miami Int'l Realty Co.*, 807 F.2d at 873. On the other hand, "no bond or a reduced bond would suffice when the creditor's interest, due to unusual circumstances, would not be unduly endangered." *Id.* Courts may consider a variety of factors in determining whether to waive a supersedeas bond:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Peters*, 2014 WL 4205065, at *2; *Dillon v. City of Chicago*, 866 F.2d 902, 904-5 (7th Cir. 1988); *see also Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir.1986); *Arban v. W. Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003).

Upon consideration of these factors and the presumption in favor of requiring a bond, the Court finds that Sho-Me has not met its burden of demonstrating an ability to pay that is "so plain that the cost of a bond would be waste a of money" or that "due to unusual circumstances" Plaintiffs' interest would not be "unduly endangered" by a stay without any kind of security. In support of the argument that Sho-Me has a "clear ability" to satisfy the judgment and any accumulated post-judgment interest after post-trial motions and an appeal are resolved, Sho-Me relies on its borrowing capacity and its ability to repay a large loan through future electricity rate increases. Sho-Me relies primarily on a commitment letter from CoBank, which states that if there is a draw on a letter of credit issued by it to secure the judgment on behalf of Sho-Me, CoBank will loan Sho-Me Power the amount of the draw, on an unsecured basis, up to $90 million. [Doc. 662-1]. Sho-Me also asserts that it has a borrowing capacity of $243 million and a

4

net book value in excess of $378 million, and it could borrow against its assets. However, if the Court permitted a stay without security, Plaintiffs could not force Sho-Me to obtain financing to pay the judgment after appeal, which would put Plaintiffs at risk of obtaining no judgment at all or only a partial judgment based on Sho-Me's current assets (those of which can be timely executed) of $45.4 million.

Sho-Me argues that the commitment letter demonstrates an ability to borrow and pay, so no security is required. CoBank has committed to issue a letter of credit and has agreed to an unsecured loan of up to $90 million to Sho-Me in the event that there is a draw on that letter, but CoBank's commitment is based on the issuance of a letter of credit and Sho-Me's payment for that letter of credit in an amount specified within that letter. Sho-Me requests that this Court permit a stay without requiring it to obtain that letter of credit, or any other type of security. If the Court were to conclude that Sho-Me is not required to post any kind of security, including the letter of credit from CoBank, there is no evidence that CoBank would still agree to loan Sho-Me $90 million in an unsecured loan after an appeal which could take several years. As Sho-Me has clearly represented to the Court, the availability of funds to pay the judgment is contingent on securing financing. That contingency is not appropriately placed on Plaintiffs under the circumstances.

This conclusion is consistent with other courts who have concluded that security was necessary given the financial position of the party seeking a stay. For instance, in *In re Apollo Grp. Inc. Sec. Litig.*, the district court required a bond where the defendant's total assets were approximately six times the estimated damages award in the case. *In re Apollo*, 2008 WL 410625, at *1 (D. Ariz. 2008). In this case, Sho-Me's total assets documented in their 2013 annual report are $437.4 million, which is also approximately six times the amount of the $79

5

million judgment. In contrast, in instances where a court has concluded that a bond is unnecessary, the ratio has been much higher. In *Frommert v. Conkright*, the district court concluded that requiring a bond on a judgment which would "appear to run into the tens of millions at most" would be a "waste of money" because the defendants submitted evidence of over $ 3 billion in assets. *Frommert*, 639 F. Supp. 2d 305, 313 (W.D.N.Y. 2009). Likewise, in *Federal Prescription Service, Inc. v. American Pharmaceutical Association*, the district court did not require a bond to stay enforcement of a $102,000 (plus fees and costs) judgment where, among other reasons, the "documented net worth of the judgment debtor was $4.8 million, about 47 times the amount of the damage award." *Fed. Prescription Serv., Inc.*, 636 F.2d at 761; *see also Halbach v. Great-West Life & Annuity Ins. Co.*, 2009 WL 214671, at *3 n. 4 (E.D. Mo. 2009) (waiving bond on approximately $500,000 award of fees and costs because, among other reasons, the defendant was "a company with over 40 billion dollars in total assets, nearly half a billion dollars in net income, and an A+ rating from A.M. Best Company, Inc.").

Sho-Me has not demonstrated "unusual circumstances" or an ability to pay that is "so plain that the cost of a bond would be waste of money." There is a presumption in favor of requiring security, and the Court finds that to protect Plaintiffs' interest pending resolution of post-trial motions and an appeal, Sho-Me must post adequate security to obtain a stay of enforcement of the judgment against them under both Rules 62(b) and 62(d). Sho-Me's Renewed Motion to Stay Judgment Without Bond, [Doc. 659], is denied.

**B. Adequate Security**

Having determined that Sho-Me must post security before obtaining a stay, the Court must next determine an amount of security that would sufficiently protect the Plaintiffs' interest. The amount of a bond or other security and what constitutes "appropriate terms" is left to the

trial court's discretion. *Miami Int'l Realty Co.*, 807 F.2d at 873; *Newburgh/Six Mile Ltd. P'ship II*, 2010 WL 3167393, at *1. A bond fully protecting the Plaintiffs' interest is the requirement in normal circumstances, and the amount generally includes the principal amount of the judgment, anticipated interest on the judgment, and costs. *Mansion House Ctr. Redev. Co.*, 682 F.Supp. at 449; *Miami Int'l Realty Co.*, 807 F.2d at 873.

Plaintiffs argue the letter of credit should be for the entire judgment amount, plus post-judgment interest and costs. [Doc. 694]. Sho-Me argues that if it is required to post security – which it does – then an appropriate amount would be a $10 million letter of credit. Alternatively, Sho-Me proposes that the Court require a $35 million letter of credit, which would be the difference between the amount of the judgment and estimated post-judgment interest while the appeal is pending ($79 million, plus post-judgment interest) and Sho-Me's net current assets that Plaintiffs admit are available for immediate execution ($45.4 million). Sho-Me argues only partial security is necessary because it has demonstrated an ability to pay the judgment. Sho-Me also contends that partial security is sufficient because it will reduce Sho-Me's costs to obtain the letter of credit, which will benefit citizens in rural Missouri, including class members, who will indirectly pay for these costs through increased electricity rates. Sho-Me argues partial security would also benefit Plaintiffs because if the judgment is vacated, these costs would be shifted to Plaintiffs.

While Sho-Me has not demonstrated an ability to pay that is "so plain" that no security is required, Sho-Me has demonstrated some ability to pay sufficient to warrant only partial security. Therefore, to stay enforcement of the judgment pending post-trial motions and an appeal, Sho-Me must provide security in the amount of $41.5 million. In addition, Sho-Me Power and Sho-Me Tech must maintain combined net current assets (those which can be

7

liquidated in a timely manner by Plaintiffs) in the amount of $45.4 million, and Sho-Me Power and Sho-Me Tech shall provide quarterly reports to Plaintiffs demonstrating that this requirement has been met until the time the judgment is satisfied or vacated. If at any point Sho-Me Power's and Sho-Me Tech's combined net current assets fall below $45.4 million, the stay is lifted and Plaintiffs may enforce the judgment against Sho-Me Power and Sho-Me Tech. And while a $41.5 million letter of credit requirement combined with the requirement that Sho-Me Power and Sho-Me Tech maintain combined net current assets of $45.4 million amounts to 110% of the judgment, the Court finds this number fair to account for post-judgment interest and costs. *See Trans World Airlines, Inc. v. Hughes*, 515 F.2d 173, 177 (2d Cir. 1975) (to stay enforcement of $145 million default judgment pending appeal, defendant was required to obtain $75 million letter of credit, maintain a net worth of $335 million, present plaintiff with a quarterly audited and certified balance sheet proving net worth, and agree not to distribute or transfer assets to reduce the net worth to less than $335 million); *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F.Supp.2d 999, 1029 (N.D. Cal. 2012) ("Although practices vary among judges, a bond of 1.25 to 1.5 times the judgment is typically required" to cover "the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay") (citing Christopher A. Goelz & Meredith J. Watts, Cal. Prac. Guide: Ninth Cir. Civ. Appellate Prac. ¶ 1:168 (TRG 2011)). As discussed below, this $41.5 million security shall be in the form of a letter of credit from CoBank. Plaintiffs' Motion to Require the Sho-Me Defendants to Post Adequate Security, [Doc. 654], is granted in part and denied in part.

### C. Letter of Credit from CoBank

To stay enforcement of the judgment pending post-trial motions and appeal, Sho-Me must obtain a letter of credit in the amount of $41.5 million along with the other requirements

listed in Part II.B. Plaintiffs and Sho-Me agree on the form of a CoBank letter of credit. [Docs. 715, 691-2]. While Rule 62(d) states that an appellant may obtain a stay by supersedeas bond, "the [C]ourt has discretion to allow other forms of judgment guarantee," and a letter of credit can be an acceptable alternative. *See, e.g.*, *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.3d 1189, 1191 (5th Cir. 1979) ("If a judgment debtor objectively demonstrates a present financial ability to facilely respond to a money judgment and presents to the court a financially secure plan for maintaining that same degree of solvency during the period of an appeal, the court may then exercise a discretion to substitute some form of guaranty of judgment responsibility for the usual supersedeas bond."); *Trans World Airlines, Inc.*, 515 F.2d at 177 (discussing district court's decision to impose a $75 million letter of credit plus other requirements as an acceptable substitute for a supersedeas bond); *Fed. Prescription Serv., Inc.*, 636 F.2d at 759 ("Rule 62(d) entitles the appellant who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right. . . . But the Rule in no way necessarily implies that filing a bond is the only way to obtain a stay.").

Upon review of the attached "Form of Letter of Credit" and the accompanying draw documents, [Doc. 715-1], the Court finds the letter of credit jointly proposed by the Parties to be an acceptable substitute to the ordinarily required supersedeas bond. The letter of credit from CoBank lists UMB Bank, NA as the beneficiary and as the escrow agent to disburse funds that may be drawn pursuant to the letter of credit. The letter of credit is irrevocable for one year, automatically extends for one or more additional periods of one year unless CoBank provides UMB Bank with forty-five days' notice, and permits, upon such notice, UMB Bank to immediately draw up to the full amount of security ($41.5 million) from CoBank.[4] Further, Sho-Me, Dwight Robertson, Mike and Gina Biffle, and UMB Bank have entered into an Escrow

---

[4] See [Doc. 715-1] for the complete terms of the letter of credit, which the Court incorporates into this Order.

Trust Agreement which requires UMB Bank to draw under the letter of credit upon written notice by CoBank that CoBank has elected not to renew the letter of credit or upon notice by Plaintiffs and Sho-Me of the Eighth Circuit's issuance of its mandate. [Doc. 715-2 at pp. 4-5]. The Escrow Trust Agreement provides a mechanism for determining what amount shall be drawn upon the issuance of such mandate. *Id* at 5.[5] The Parties have also agreed to and request the Court's appointment of Garretson Resolution Group, Inc. as the claims administrator should the judgment in this case be affirmed in whole or in part. [Doc. 715-2, p. 2]. The Escrow Trust Agreement provides that UMB shall remit funds drawn under the letter of credit to Garretson on behalf of the Plaintiffs. *Id.* at 6. The issuer of the letter of credit, CoBank, boasts one of the highest bank ratings in the United States and has a credit rating from S&P and Fitch of AA-. It has been named the safest bank in the United States by *Global Finance* magazine and has earned a place on its "World's 50 Safest Banks" list for the last four years. It is also a member of the Farm Credit System, a nationwide network of banks and retail lending associations with a combined net income of $4.724 billion. *See* [Doc. 662-2].

Because the form of the letter of credit is such that it functions similarly to a supersedeas bond and because Plaintiffs agree to its form, the Court approves the form of the letter of credit from CoBank, attached at docket entry 715-1. The Court also approves the Escrow Trust Agreement between Sho-Me, Dwight Robertson, Mike and Gina Biffle, and UMB Bank, attached at docket entry 715-2. The Garretson Resolution Group, Inc. of Cincinnati, Ohio, is appointed to serve as claims administrator if the judgment is affirmed in whole or in part. A letter of credit in the approved form and in the amount of $41.5 million shall be issued by CoBank and submitted to UMB Bank within five business days after this Order consistent with

---

[5] See [Doc. 715-2] for the complete terms of the Escrow Trust Agreement, which the Court incorporates into this Order.

the terms of the Escrow Trust Agreement. Upon proof that the letter has been issued and submitted to UMB Bank, the Court will stay enforcement of the judgment pursuant to Federal Rules of Civil Procedure 62(b) and 62(d). Sho-Me's Motion to Approve Form of a Letter of Credit as Security for a Stay of Judgment, [Doc. 661], is granted in part. The Parties' Joint Amended Motion to Approve the Form of a Letter of Credit and Escrow Agreement as Security for a Stay of Judgment, [Doc. 715], is granted.[6]

### III. Conclusion

Within five business days after the date of this Order, a letter of credit in the form discussed above and in the amount of $41.5 million shall be issued by CoBank and submitted to UMB Bank, acting as the escrow agent. In addition, Sho-Me Power and Sho-Me Tech shall maintain combined net current assets (those which can be liquidated in a timely manner by Plaintiffs) of at least $45.4 million, and Sho-Me Power and Sho-Me Tech shall provide quarterly reports to Plaintiffs demonstrating that this requirement has been met until the time the judgment is satisfied or vacated. Upon proof that the letter has been issued and submitted to UMB Bank, the Court will stay enforcement of the judgment pursuant to Federal Rules of Civil Procedure 62(b) and 62(d).

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 9, 2015
Jefferson City, Missouri

---

[6] Sho-Me's original Motion to Approve Form of a Letter of Credit as Security for a Stay of Judgment, [Doc. 661], listed the Clerk of Court as the beneficiary. At a teleconference on June 9, 2015, the Court rejected that proposal and instructed the Parties to work together to appoint a trustee. [Doc. 706]. The Parties then filed a Joint Amended Motion to Approve the Form of a Letter of Credit and Escrow Agreement as Security for a Stay of Judgment, [Doc. 715], with new terms designating UMB Bank as an escrow agent. Therefore, Sho-Me's original Motion to Approve Form of a Letter of Credit as Security for a Stay of Judgment is denied as moot.