UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CHASE BARFIELD, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SHO-ME POWER ELECTRIC )<br>COOPERATIVE, et al., )<br>)<br>Defendants. ) | Case No. 2:11-cv-04321-NKL |

**ORDER**

Before the Court is Plaintiffs' Motion to Add Federal Rule of Civil Procedure 23(c)(3) Information to Judgment, [Doc. 695], and Plaintiffs' Motion for Approval of a Plan of Allocation of the Judgment Funds and for Rule 54(b) Certification, [Doc. 717]. For the reasons set forth below, the former is granted, and the latter is granted in part and denied in part.

**I. Background**

After a five day jury trial on the issue of damages, a jury returned a verdict awarding Plaintiffs $79,014,140 for claims arising out of the Sho-Me Defendants'[1] (hereinafter Sho-Me) unauthorized use of electric transmission line easements on Plaintiffs' property for commercial telecommunications purposes. On the day of the jury's verdict, the Clerk of Court filed a Judgment which stated that the jury found the Plaintiffs' damages to be $79,014,140. [Doc. 621]. That Judgment was amended nunc pro tunc in April 2015 to identify who the judgment is against and to cross-reference the Court's prior liability determination. [Doc. 690]. A Second Amended Judgment was filed in June 2015 to include the Court's award of post-judgment interest to Plaintiffs. [Doc. 702]. On August 21, 2015, the Court denied Sho-Me's post-trial Rule 50

---
[1] Sho-Me Power Electric Cooperative and Sho-Me Technologies, LLC

1

Motions for Judgment as a Matter of Law, [Docs. 607, 638], and Sho-Me's Rule 59 Motion for New Trial, [Doc. 638]. [Doc. 730]. Plaintiffs now request that the Court amend the Second Amended Judgment to comply with Federal Rule of Civil Procedure 23(c)(3). [Doc. 695]. Plaintiffs also request approval of their proposed Plan of Allocation, which sets out the proposed method for distribution of the judgment fund, and, out of an abundance of caution, for certification under Rule 54(b) that the judgment is a final disposition of Plaintiffs' claims against the Sho-Me Defendants. [Docs. 717, 717-1].

## II. Discussion

### A. Plaintiffs' Motion to Amend the Judgment

#### 1. Information Required in Judgment

Plaintiffs request that the Second Amended Judgment be amended in accordance with Federal Rule of Civil Procedure 23(c) to include a description of the class and those excluded from the class. Rule 23(c)(3)(B) states that for any class certified under Rule 23(b)(3), "[w]hether or not favorable to the class, the judgment in a class action must . . . include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members." Fed. R. Civ. Pro. 23(c)(3)(B).

Sho-Me argues Rule 23(c)(3)(B) requires a final judgment to include the names of and amounts awarded to each class member. However, this interpretation is inconsistent with the plain language of Rule 23(c)(3)(B) which requires the judgment to "specify *or* describe" class members. Fed. R. Civ. Pro. 23(c)(3)(B) (emphasis added); s*ee also* 1 *Newberg On Class Actions* § 2:4 (4th ed. 2002) ("The drafters of Rule 23(c)(3) were careful not to require in a final class judgment that all class members be specifically identified. Rather, even in classes under Rule 23(b)(3), all that is required is that the class be described in the final judgment."); *Cook v.*

*Rockwell Int'l Corp.*, 618 F.3d 1127, 1137-38 (10th Cir. 2010) (concluding that judgment was sufficiently final under Rule 54(b) because although it did not distribute the aggregate class award among individual members, an allocation plan provided a thorough framework for determining each class member's damages); *Cook v. Rockwell Int'l Corp.*, No. 90-cv-00181-JLK (D. Colo. filed June 2, 2008) (final judgment describing class but not listing individual class members).

In support of their argument, Sho-Me cites to *Allapattah Servs., Inc. v. Exxon Corp.*, 157 F.Supp.2d 1291 (S.D. Fl. 2001), *aff'd on other grounds*, 333 F.3d 1248 (11th Cir. 2003); *aff'd on other grounds*, 545 U.S. 546 (2005). In *Allapattah*, gasoline dealers brought a class action against Exxon alleging Exxon breached a sales agreement by overcharging for fuel purchases. A jury returned a special verdict, which determined that Exxon was liable for overcharging, the time period by year in which the overcharge occurred, and the amount, in cents per gallon, by which Exxon overcharged. *Allapattah*, 157 F.Supp.2d at 1297. When the plaintiffs moved for the district court to calculate an aggregate damage award by multiplying the cents per gallon determination by the time period at issue and the number of gallons purchased by the class members over that time period, the district court declined to do so after determining that the jury did not award an aggregate compensatory damage award. Rather, by determining a cents per gallon amount, the jury determined class damages in the form of a common guideline or factor that would apply to determine the measure of damages of each class member during the claims administration process. *Id.* at 1297-98. There were also individual considerations that prevented an aggregate damage award and necessitated identification of each class member before a final judgment. For example, because the class was a nationwide class, different statutes of limitations and prejudgment interest calculations applied to class members of different states. *Id.*

at 1300; *see also Allapattah*, 33 F.3d at 1257. Exxon also filed set-off claims against some class members. The district court concluded that because the verdict did not determine an aggregate award to the class as a whole, it was not final as contemplated by the Federal Rules of Civil Procedure. *Allapattah*, 157 F. Supp.2d at 1304. Instead, the district court concluded that final judgment could not be entered "until after individual class members have made claims and both the validity and the amount of the claims have been determined; that is, to be 'final,' the judgment must adjudicate all aspects of the claim, including compensatory damages and prejudgment interest for each class member." *Id.*

Unlike the jury in *Allapattah*, however, the jury in this case determined an aggregate damage calculation. The need to identify individual class members to determine applicable statutes of limitations, off-set counterclaims, prejudgment interest, or other individualized inquiries is not present here, and including the names of the class members will not affect the amount of damages owed by Sho-Me. Although class members must be identified through property records and a claims process, the Parties agree on the applicable time period of ownership and the number and location of the miles of fiber optic cable at issue. All that remains to be done is for the members of the class to submit claims and a copy of a deed showing ownership during the relevant period (which may be cross-checked by the Claims Administrator or Claims Center Director using tax records and GIS mapping technology). "Although computing the money owed each class member is not automatic, it is mechanical, is unlikely to engender dispute or controversy [despite Sho-Me's insistence of its right and plan to contest every claim], and will require no analytic or judgmental determinations that might affect the questions presented" to the Eighth Circuit. *See Parks v. Pavkovic*, 753 F.2d 1397, 1402 (7th Cir. 1985) (Posner, J.).

4

Sho-Me also cites to *Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 688 (11th Cir. 1987) and *Eubanks v. Pickens Bond Const. Co.*, 635 F.2d 1341 (8th Cir. 1980), for support that Rule 23(c)(3) requires the judgment to name the class members and identify amounts awarded for each class member. However, while the courts in those cases found the judgments entered by the district court – which included a list of the names of class members – to be sufficient under Rule 23(c)(3), neither case held that Rule 23(c)(3) requires a list of class member names, merely that inclusion of the names was sufficient. Further, Sho-Me's contention that the names of and amounts owed to class members is required for entry of a final judgment is contrary to Sho-Me's sur-reply directing the Court's attention to *Strey v. Hunt Int'l Resources Corp.*, 696 F.2d 87 (10th Cir. 1982). In *Strey*, the district court entered a Rule 54(b) judgment that awarded damages in favor of the plaintiff class but did not provide for the division of damages among the class members. The Tenth Circuit concluded that the judgment was not a final, appealable decision "until the district court establishes both the formula that will determine the division of damages among class members and the principles that will guide the disposition of any unclaimed funds." *Strey*, 696 F.2d at 87. *Strey*, cited by Sho-Me, does not require identification of each class member and the amounts owed. The Court therefore concludes that it is not necessary that the final judgment identify the names of and amounts owed to each class member to comply with Rule 23(c)(3). Consistent with Rule 23(c)(3), the final judgment filed concurrently with this Order will include a description of the class and of those excluded from the class.

### 2. Sho-Me's Right to Contest Every Claimant's Standing

Sho-Me also argues the judgment cannot be final until the Court initiates the claims process and permits Sho-Me to "exercise their right to contest each and every claimant's standing as a class member and the amount of payment due, if any, based upon the alleged

5

period of ownership and quality of title questions." [Doc. 696, p. 3]. In support of this argument, Sho-Me again cites to *Allapattah*. In *Allapattah*, the district court agreed with Exxon that it had a right to participate in the claims administration process and to file objections. The district court stated that "Exxon is a real party in interest. It would have to pay any damages determined to be due. It thereby has the right to appear and participate, including to object and oppose any unfounded or incorrect claim." *Allapattah*, 157 F.Supp.2d at 1324. The district court concluded that Exxon did not have standing to participate in disputes between class members, but did have standing to contest the total amount of the award at issue. *Id.* Exxon was permitted to filed objections related to off-set claims and could challenge whether a class member was a dealer during the relevant time period, the gallons purchased by the class member during the relevant time period, the proper application of any applicable statute of limitations and releases, subject matter jurisdiction issues, and any purported miscalculation of compensatory damages and prejudgment interest. *Id.* On appeal, the Eleventh Circuit affirmed Exxon's right to participate in the claims process. *Allapattah*, 333 F.3d at 1258-59. While recognizing that a defendant "has no interest in how the class members apportion and distribute a damage fund among themselves," the Eleventh Circuit stated that in the case before it, "no damage fund ha[d] been created and there [were] several issues that must be resolved during the claims process." *Id.* at 1259-60. The Eleventh Circuit also stated that "fairness dictates that the procedures should allow for a more formal adversary process" when large claims are involved, and because "Exxon has certain defenses to each dealer's claim, . . . an adversarial claims process is warranted in this case." *Id.* at 1259.

Unlike in *Allapattah*, however, as discussed above, a jury determined the total damages due in this case, and a damage fund has been created. *See Allapattah*, 333 F.3d at 1259. Nor

6

does Sho-Me have "certain defenses" to each landowner's claim such as off-set claims, statute of limitation defenses, or prejudgment interest arguments. *Id.* Rather, the jury in this case determined an aggregate amount which it assessed to be the fair market rental value of Sho-Me's use of the fiber-optic cable on Plaintiffs' land for commercial telecommunications purposes. Sho-Me does not have standing to object to disputes among class members regarding ownership of the property. In *Allapattah*, the jury decided only a guideline for determining damages without any "cap" on the amount of damages Exxon was required to pay. It makes sense, then, that Exxon had a due process right to object to invalid claims which could significantly expand the amount of damages owed, even if those damages were not incurred. But here, the jury determined a fixed amount of damages for the entire class based on an agreed upon number of miles and affected parcels for an agreed upon period of time, and Sho-Me faces no risk of a ballooning damages assessment based on invalid claims.

### 3. Class Certification

Sho-Me also asks the Court to revisit certification of the class because there is no administratively efficient way to identify class members. To the contrary, Plaintiffs' proposed Plan of Allocation, discussed in more detail below, outlines the process the Claims Center Director and Claims Administrator will use in identifying class members. The process is consistent with the process originally proposed by Plaintiffs in their Motion for Class Certification, which this Court granted, [Doc. 254], and Sho-Me has not identified any new facts or arguments which would require decertification. Class members will be identified by consulting property and tax records associated with the agreed upon miles affected by the jury's award. In the event that a dispute arises regarding land ownership during the relevant time period, separate mini-trials, a special master, later stratification of the class, or a magistrate may

7

be available to resolve such issues. Further, merely because individual issues may, speculatively, arise in determining land ownership in certain cases, certification is still appropriate because questions common to the class predominate over those individual inquiries.

### B. Plaintiffs' Motion for Approval of a Plan of Allocation of the Judgment Funds

In a sur-reply in response to Plaintiffs' motion to amend the judgment, Sho-Me directed the Court's attention to *Strey v. Hunt Int'l Resources Corp.*, 696 F.2d 87 (10th Cir. 1982), for the Tenth Circuit's holding that a class judgment cannot constitute "an appealable final decision . . . until the district court establishes both the formula that will determine the division of damages among class members and the principles that will guide the disposition of any unclaimed funds." Plaintiffs argue that the Eighth Circuit has not adopted *Strey*'s requirements and that a plan is not necessary for entry of final judgment but nonetheless, out of caution, seek approval of a proposed Plan of Allocation in the event the Eighth Circuit adopts *Strey*'s requirements.

Plaintiffs' proposed Plan of Allocation, attached at docket entry 717-1, provides for the division of tasks between a Claims Administrator, Garretson Resolution Group, Inc., and a Claims Center Director, Straup Solutions, LLC. It also describes the division among class members of a "Net Class Award." The Plan of Allocation explains that the Claims Center Director shall consult Missouri property and tax records and compile a list of county tax parcel identification numbers associated with the property underlying Category 1A, 1B, or 1C easements (*see* [Doc. 396]). The Claims Center Director will determine the number of linear feet of fiber-optic cable that transverses the property along a Category 1A, 1B, or 1C easement. The judgment (including post-judgment interest and less costs, fees, expenses, and service awards to the named Plaintiffs) will be allocated *pro rata* among "Compensable Class Members"[2] based on

---

[2] The Allocation Plan defines "Compensable Class Members" as "Class Members who owned Compensable Class Property any time between January 21, 2005 and February 2, 2015, *i.e.*, the time period of commercial

the number of linear feet of fiber-optic cable on their "Compensable Class Property"[3] and on the temporal length of their ownership of such property during the applicable time period. The monthly per-foot share allocated to each "Compensable Class Member" is computed by:

> (a) dividing the Net Class Award by 4,202,880 feet, the number of feet in the 796 miles stipulated to be the total distance of all Compensable Class Property [Doc. 562 ¶ 12]; then (b) dividing the resulting figure by 120 months, the rounded number of months of commercial telecommunications use stipulated by the parties before trial [*id.*]; and then (c) multiplying the resulting figure by the number of linear feet of fiber-optic cable transversing each Compensable Class Property.

[Doc. 717-1, ¶ 11]. The proposed Plan of Allocation also describes the plan for disposition of unclaimed funds. *Id.* at ¶ 13. Any funds allocable to the "Compensable Class Members" that remain unclaimed will be distributed on a *pro rata* basis to those "Compensable Class Members" who filed claims. In the unlikely event that funds still remain after a second distribution, a *cy pres* fund will be designated at a later time. *Id.* at ¶ 14. Sho-Me objects to several aspects of the proposed Plan of Allocation.

### 1. Allocation of Judgment Funds

First, Sho-Me argues that there is no valid basis to allocate the verdict using a pro rata per-foot, per-month calculation because the jury did not specify such an allocation and was not asked to do so. At trial, the jury was instructed to award Plaintiffs – defined as both Mr. and Mrs. Biffle and Mr. Robertson as well as the class members – "such sum as you may find from the evidence to be the fair market rental value of Defendants' use of the fiber optic cable on Plaintiffs' land for commercial-telecommunications purposes from January 21, 2005 until

---

telecommunications use of the fiber-optic cable as stipulated at trial. [*See* Doc. 562 ¶ 12]." [Doc. 717-1, ¶ 1.e.]. "Compensable Class Property" means "all property owned by a Class Member which is burdened by an electric transmission line easement granted or assigned to Sho-Me Power or Sho-Me Tech that falls within Category 1A, 1B, or 1C, as those terms are used in the Court's summary judgment order. [Doc. 396.]." [Doc. 717-1, ¶ 1.f.].

[3] *See supra* note 2.

February 2, 2015." [Doc. 617, pp. 19-20]. Plaintiffs' expert testified that compensation should be calculated on a uniform per-foot, per-year basis consistent with market rates for fiber optic cable corridor easements across the United States. *See e.g.*, [Doc. 647, p. 110:14-111:9; 127:1-18]. Sho-Me's expert testified that the before-and-after approach applied to valuing Sho-Me's use and valued the use based on the space taken up by the fiber optic cable. The amount of feet and time at issue were stipulated by both Parties. During the jury's deliberation, the jury requested a calculator and an exhibit listing the various possible market rental values discussed by Dr. Kilpatrick. *See e.g.* [Doc. 650, p. 680-85]. They also requested clarification of Sho-Me's expert's testimony – whether his estimations were a total award or a per foot, per year award. [Doc. 650, p. 689:20-23]. The verdict the jury returned, $79,014,140, is equal to $1.88 per foot, per year for 10 years[4] and was within the range presented by Plaintiffs' expert. Contrary to Sho-Me's argument, allocating the aggregate award on a per-foot, per-month basis is not speculative.

In support of their argument that the aggregate damage award cannot be divided equally among class members, Sho-Me cites to *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1023 (8th Cir. 2008). *Craig Outdoor Advertising* did not address equal allocation of an aggregate damage award to class members. Rather, in *Craig Outdoor Advertising*, four plaintiffs brought three theories of recovery stemming from the same injury, and each theory was tried before a jury. The verdict forms provided separate blank lines on which to indicate the actual damages awarded to each Plaintiff under each theory of recovery, but the form did not provide a separate blank line on which to indicate the total damages awarded to each Plaintiff. *Id.* at 1021. On each line for each theory of recovery, the jury

---

[4] Sho-Me also argues that Plaintiffs' proposed method of awarding claiming class members $1.88 per foot, per year "does not yield the specific amount of the verdict." However, in its brief, Sho-Me miscalculated the number of feet in 796 miles. There are 4,202,880 feet in 796 miles, not 4,202,808 feet as suggested by Sho-Me. $79,014,140 ÷ 4,202,880 feet ÷ 10 years = $1.8799999 per foot, per year.

10

awarded identical damages. *Id.* at 1021. After the trial, the defendant argued that because there was a single indivisible injury in the case, entering judgment on each claim would result in double recovery. The plaintiffs argued that the verdict forms were confusing and caused the jury to mistakenly apportion the total actual damages for each plaintiff across the three theories of recovery. *Id.* at 1021-22. The district court rejected the plaintiffs' argument, and the Eighth Circuit affirmed, concluding that "[n]othing in the jury instructions or the verdict forms directed or permitted the jury to allocate the total actual damages amount awarded to a plaintiff among that plaintiff's three state-law claims." *Id.* at 1022. The Eighth Circuit also rejected the plaintiffs' argument that "the only logical and consistent" reading of the forms required a conclusion that the jury allocated the total damages among each of the three claims. *Id.* at 1023. *Craig Outdoor Advertising* does not stand for the proposition that an aggregate damage award cannot be divided equally among class members because the jury did not make a specific finding that the award be divided equally. There is a valid basis, supported by evidence, for Plaintiffs' plan to allocate the jury's award *pro rata* among class members on a per-foot, per-year basis.

   **2. Plan for Unclaimed Funds**

Next, Sho-Me argues that the proposed Plan of Allocation, which provides for a *pro rata* redistribution of unclaimed judgment funds to claiming class members, should not be approved because any unclaimed funds must revert to them. Sho-Me contends that a second distribution to claiming class members up to 100 percent of their gross claim value (rather than a net value that is reduced by attorneys' fees, costs, and administrative expenses) is not appropriate because it would serve to punish Sho-Me when it "acted in good faith, . . . upon advice of counsel, for the public good, in accord with the law of express easements, and, as a not-for-profit company, without profit motive." [Doc. 721, p. 5].

11

There are four ways in which courts have distributed unclaimed funds: "*pro rata* distribution to the class members, reversion to the defendant, escheat to the government, and *cy pres* distribution." *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703, 706 (8th Cir. 1997) (citing 2 *Newberg on Class Actions* § 10.15 (3d ed. 1992)); *Kansas Ass'n of Private Investigators v. Mulvihill*, 159 S.W.3d 857, 860-61 (Mo. Ct. App. 2005). However, because the claims process has not yet occurred, the appropriate disposition of unclaimed funds – if unclaimed funds exist at all – is a matter not yet ripe for determination and need not be decided prior to entry of a final judgment for purposes of appeal. *See Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 904 (8th Cir. 1999) (affirming the district court's substantive law decisions, but vacating the district court's order creating a *cy pres* fund for unclaimed damages as premature); *Fogie v. THORN Americas, Inc.*, 2001 WL 1617964 (D. Minn. 2001) (denying request for reversion of unclaimed funds and creating a *cy pres* fund on remand after unclaimed funds remained); *Fogie v. THORN America's, Inc.*, No. 3-94-0359-MJD (D. Minn. filed Nov. 9, 2001) (ordering distribution of funds to class and ordering residual funds to be designated to a *cy pres* recipient designated at a later time); *see also Kansas Ass'n of Private Investigators*, 159 S.W.3d at 862 ("The trial court abused its discretion when it distributed the unclaimed funds without providing the parties with notice and an opportunity for a hearing.").[5]

---

[5] Even if the matter were ripe for consideration, reversion of unclaimed funds to Sho-Me is likely inappropriate. "[R]eversion to the defendant may be appropriate when deterrence is not a goal . . . or is not required by the circumstances." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990). It may also be appropriate where the defendant acted without malice or bad faith and was complying with the existing law and could not have known that it had greater duties. *Kansas Ass'n of Private Investigators*, 159 S.W.3d at 861 (discussing *Van Gemert v. Boeing Co.*, 739 F.3d 730, 737-38 (2d Cir. 1984)). In this case, Sho-Me was not complying with the terms of its easements and as previously determined by this Court, trespassed by exceeding the scope of the rights granted to them by class members. Further, "[t]he general principle [of unjust enrichment] is that one person should not permit himself to be unjustly enriched at the expense of another, but should be required to pay the value of benefits received or appropriated where it is just and equitable that such payment be made." *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo. Ct. App. 2000). Given the purpose of an unjust enrichment cause of action, it would be inappropriate, unjust, and inequitable to allow Sho-Me to retain the value of the benefits it received from class members. *See Newberg on Class Actions* § 12:29 (5th ed. 2015) ("For most courts and commentators, [the benefits of reversion] do not outweigh the downside of reversion for several reasons. *First*, unlike proponents of

12

The Court recognizes that its decision to determine the appropriate disposition of unclaimed funds after the claims process has occurred is contrary to the Tenth Circuit's approach in *Strey v. Hunt Int'l Resources Corp.*, 696 F.2d 87 (10th Cir. 1982), and *Cook v. Rockwell*, 618 F.3d 1127, 1138 (10th Cir. 2010). In these cases, the Tenth Circuit concluded that when damages are not allocated to specific class members, the resolution of class liability claims may warrant Rule 54(b) certification if the district court establishes both the formula that will determine the division of damages among class members and the principles that will guide the disposition of any unclaimed funds. However, the Eighth Circuit has not adopted the Tenth Circuit's approach, and in light of the Eighth Circuit's opinion in *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 904 (8th Cir. 1999), a final judgment outlining a plan for unclaimed funds would likely be vacated as premature where it is unclear whether or to what extent unclaimed funds will exist. In *Fogie*, a district court concluded that the defendant committed usury in violation of Minnesota law, awarded damages on that claim, and dismissed the class's other claims. The district court entered judgment in favor of the plaintiffs, adopted a special master's recommended plan for depositing and distributing damages, determined fees for the plaintiffs' attorneys, and ordered that all funds remaining unclaimed after complete distribution be placed in a *cy pres* fund. *Fogie*, 190 F.3d at 894. The defendant appealed and the class cross-appealed. The Eighth Circuit affirmed the district court's liability determination and method for calculating damages. The defendant also challenged the district court's creation of a *cy pres* fund and argued that unclaimed funds should revert to it. *Id.* at 904. Rather than directly addressing the

---

reversion, opponents conceptualize the settlement fund as the class's money once it leaves the defendant's coffers and thus find no justification for returning it to the defendant; this would be especially true of a fund established pursuant to a judgment rather than a settlement. *Second*, and most centrally, critics are concerned that a reversionary fund undermines the deterrent function of the class suit. . . .")

defendant's arguments regarding the creation of the *cy pres* fund, the Eighth Circuit vacated the portion of the order creating the *cy pres* fund:

> Several questions regarding the *cy pres* fund remain unanswered. Most importantly, we do not yet know whether any undistributed monies will remain. For all that appears, at the end of the day there may be nothing left to go into the fund. Moreover, the District Court has not decided how any such funds will be distributed or to whom. In the absence of information regarding the existence and amount of residual funds, the District Court acted prematurely in ordering the creation of a *cy pres* fund. Accordingly, we vacate the portion of the District Court's order that creates the *cy pres* fund for unclaimed monies without prejudicing the District Court's ability to consider the creation of a *cy pres* fund if in fact there are unclaimed monies left after the plan for the payout of damages has been fully carried out.

*Id.* On remand, distribution of funds to the class occurred and once it was clear unclaimed funds remained, the district court again considered how to distribute unclaimed funds. *See Fogie*, 2001 WL 1617964 (D. Minn. 2001). The district court concluded that reversion to the defendant was not appropriate under the circumstances of that case and created a *cy pres* fund with input from the parties. *Id.* at *2-3.

Like in *Fogie*, it would be premature to develop or approve a plan for unclaimed funds "[i]n the absence of information regarding the existence and amount of residual funds." For example, without knowing the amount of unclaimed funds that will exist, this Court cannot determine whether redistribution to claiming class members would be feasible in light of the costs of administering that redistribution. Upon conclusion of the claims process (which will commence after the Eighth Circuit issues a mandate), the Parties may submit their proposals for disposition of any unclaimed funds, and the Court will consider those proposals at that time. The lack of a plan for unclaimed funds at this juncture does not prevent this Court from entering a final judgment for purposes of appeal. As was the case in *Fogie*, the Eighth Circuit considered

14

the merits of the claims on appeal despite concluding that a plan for disposition of unclaimed funds was premature. If the Eighth Circuit believed that a plan for unclaimed funds was required before a judgment was final and appealable, the Eighth Circuit would have lacked jurisdiction in *Fogie* to consider the district court's liability determination and damages calculation.

Sho-Me's argument that the proposed Plan of Allocation should require reversion of unclaimed funds is not ripe for consideration. However, the Court also declines to approve Paragraphs 13 and 14 of the proposed Plan of Allocation which redistribute unclaimed funds to claiming class members and allocate any further remaining funds to a *cy pres* fund.

### 3. Due Process Right to Participate in the Claims Process

In opposition to Plaintiffs' proposed Plan of Allocation, Sho-Me repeats the argument that they have a due process right to participate in the claims process and to contest the duration and quality of land ownership. However, as discussed above in Part II.A.2, Sho-Me has no interest in how the Plaintiffs apportion and distribute the damage fund among themselves. This case is materially different than *Allapattah* where an aggregate damage fund was not determined by the jury, where the defendant claimed defenses pertaining to individual class members, and where individual considerations such as the applicable statute of limitations and prejudgment interest rate remained. *Allapattah*, 333 F.3d at 1259-60.

### 4. Attorneys' Fees

Sho-Me argues that Plaintiffs' proposed Plan of Allocation presumes that fees, expenses, and costs awarded to Class Counsel will be subtracted from the damages awarded by the jury and that Plaintiffs should be required to explicitly admit that statutory attorneys' fees and costs are not available in this case. Contrary to Sho-Me's interpretation of the proposed Plan of Allocation, the proposed Plan is drafted in such a manner that it accounts for either a statutory

award of attorneys' fees and costs or an award of fees and costs out of the judgment itself.[6] This Court's approval of Plaintiffs' proposed Plan of Allocation does not amount to a decision regarding the amount or source of attorneys' fees awarded to Plaintiffs' counsel. Such a decision is not yet ripe for consideration. *See* Fed. R. Civ. Pro. 54(d)(2) (a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment"); *see also* [Doc. 683] (granting Plaintiffs' *Unopposed* Motion for an Extension of Time and ordering Plaintiffs to file any motion for an award of attorneys' fees and expenses from the common fund no later than fourteen days after the Court rules on all post-trial motions and enters final judgment in this case and any motion for a fee and expense award under Mo. Rev. Stat. § 523.283.4 no later than thirty days after the Eighth Circuit issues its mandate upon conclusion of the appeal).

5. **Need for Individual Fact-Finding**

Sho-Me also argues that the proposed Plan of Allocation is silent on the need for individual fact-finding in the event that land ownership is disputed or indeterminable. While this is true, Sho-Me cites to no authority requiring every detail of the claims process to be outlined prior to entry of final judgment. As stated above, the Eighth Circuit has not adopted the Tenth Circuit's method in *Strey*. More importantly, however, the Court has previously discussed available mechanisms for resolving potential disputes during the claims process. When the Court certified this class action, it acknowledged Plaintiff's proposals for managing the case:

> If the parcel at issue is owned by multiple individuals, the compensation check will be issued in all the owners' names. In the event that individual issues involving damages or disputes between competing owners arise, this will be addressed in claims administration proceedings as between the competing owners.

---

[6] Section 1.g. of the proposed Plan of Allocation defines "Judgment Fund" as "the sum of all compensatory damages awarded in the trial of the claims of the Compensable Class Members in this matter . . . , inclusive of such attorneys' fees, expenses, costs, and pre- and post-judgment interest as have been or may be awarded to the Class . . . . [Doc. 717-1. P. 3]. Section 1.h. of the proposed Plan defines "Net Class Award" as "the Judgment Fund [defined above] less . . . (ii) fees, expenses, and costs awarded from the Judgment Fund to Class Counsel. . . ." *Id.*

16

> Separate mini-trials, a special master, later stratification of the class or a magistrate may be available to resolve such issues.

[Doc. 254, p. 33] (citing *Newberg on Class Actions* § 9:59 (4th ed. 2013)). There is no reason to believe those mechanisms cannot be utilized during the claims process should disputes arise.

### 6. Powers Vested to the Claims Administrator and Claims Center Director

Sho-Me also argues that Plaintiffs have not cited to authority for the section of the proposed Plan of Allocations that vests claims administration powers with the Claims Administrator and Claims Center Director while also granting those entities the immunities and attributes of a judicial officer with respect to their administrative functions. However, Sho-Me has provided no authority for such power and immunity not being granted. Paragraph 2 of the proposed Plan of Allocation states that the "Claims Administrator and the Claims Center Director shall operate under the continuing supervision and jurisdiction of the Court and shall have the immunities and attributes of a judicial officer with respect to their administrative functions. [Doc. 717-1, p. 3]. Federal Rule of Civil Procedure 53(a)(1)(C) permits this Court to appoint a master to address posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge. Further, Sho-Me has not objected to either the appointment of Garretson Resolution Group, Inc. as the Claims Administrator or Straup Solutions, LLC as the Claims Center Director as defined in the proposed Plan of Allocation.

### C. Plaintiffs' Motion for Rule 54(b) Certification

In addition to requesting approval of their Plan of Allocation in the event that the Eighth Circuit adopts the requirements outlined in *Strey*, Plaintiffs also request that the Court include a prophylactic certification under Federal Rule of Civil Procedure 54(b) that the judgment is a final disposition of Plaintiffs' claim against the Sho-Me Defendants and that there is no just reason for delay. Sho-Me agrees Rule 54(b) certification "may possibly help in obtaining immediate

appellate review." [Doc. 721, p. 11].[7]  Rule 54(b) states that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Plaintiffs' claims have been resolved, both in liability and damages, and Sho-Me has no affirmative defenses left to be litigated.  Post-trial motions for judgment as a matter of law and for a new trial have been denied.  All that remains is the implementation of the claims process, identification of the class members through the process outlined in Plaintiffs' proposed Plan of Allocation, and ministerial allocation of damages among claiming class members.   In the event that unclaimed damages remain, the Parties will be permitted at that time to petition the Court with their proposals.  While the Court is confident that the judgment that will follow this Order is sufficiently final for purposes of appeal, out of caution, the Court will also certify pursuant to Rule 54(b) that Plaintiffs' claims for relief have been finally adjudicated, no affirmative defenses or cross-claims remain, and there is no just reason for delay in entry of judgment on Plaintiffs' claims and the jury's award of damages under Plaintiffs' unjust enrichment claim.

### III. Conclusion

Plaintiffs' Motion to Add Federal Rule of Civil Procedure 23(c)(3) Information to Judgment, [Doc. 695], is granted.  The Court concludes that the names of and amounts owed to each class member need not be identified prior to entry of final judgment.  While the Eighth Circuit has not adopted the plan of allocation method outlined by the Tenth Circuit in *Strey*, the

---

[7] While Sho-Me agrees that Rule 54(b) certification "may possibly help in obtaining immediate appellate review," Sho-Me contends that the certification also must either order an interlocutory appeal on all issues raised by the parties' Rule 50 motions, motions for a new trial and motions for an amended judgment or enter a final judgment in favor of the Biffles and Robertson for a sum certain.  The Court does not believe either of these alternatives are necessary and that the judgment entered concurrently with this Order is sufficiently final under the Federal Rules of Civil Procedure.

18

Court agrees with the Parties that a plan of allocation outlining how damages will be disbursed to class members must be filed at some point prior to distribution of the judgment fund and that approving such a plan now will further move this case toward its ultimate resolution. Plaintiffs' proposed Plan of Allocation is sufficient for entry of final judgment (if one is even required at all), and a more detailed plan (outlining dates, notice plans, and tasks assigned to each administrator) shall be submitted to this Court for approval should the Eighth Circuit affirm all or part of the judgment in favor of Plaintiffs. However, as discussed above, the proposed Plan of Allocation prematurely outlines a plan for unclaimed funds. Therefore, Plaintiffs' Motion for Approval of a Plan of Allocation of the Judgment Funds and for Rule 54(b) Certification, [Doc. 717], is granted subject to removal of Paragraphs 13 and 14, which redistribute unclaimed funds to claiming class members and allocate any further remaining funds to a *cy pres* fund. Consistent with the Plan of Allocation, the Court appoints Garretson Resolution Group, Inc. as the Claims Administrator and Straup Solutions, LLC as the Claims Center Director. Plaintiffs' request for Rule 54(b) certification is granted. An Final Judgment will be filed contemporaneously with this Order. A Plan of Allocation consistent with this Order will be attached to the Final Judgment as Exhibit A.

                s/ Nanette K. Laughrey
                NANETTE K. LAUGHREY
                United States District Judge

Dated: August 21, 2015
Jefferson City, Missouri