# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| CHASE BARFIELD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cv-04321-NKL |
| | ) | |
| SHO-ME POWER ELECTRIC | ) | |
| COOPERATIVE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

On September 5, 2017, a Clerk's Judgment was entered in this case following a six-day jury trial. The jury awarded $129,211,337.00 in actual damages and $1,300,000.00 in punitive damages. Neither party has moved for a new trial.

Pursuant to Fed. R. Civ. Pro. 59(d), the Court now vacates the judgment entered on September 5, 2017 and *sua sponte* orders a new trial. Rule 59(d) provides, "No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion…. [T]he court must specify the reasons in its order." *See also Peterman v. Chicago R.I. & P.R. Co.,* 493 F.2d 88, 91 (8th Cir. 1974) (the time in which a court has the power to order a new trial on its own initiative is restricted to the time specified in Rule 59(d)). Generally, a district court may grant a new trial when the first trial resulted in a miscarriage of justice, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial. *Trickey v. Kaman Indus. Techs. Corp.*, 705 F.3d 788, 807 (8th Cir. 2013). The Court concludes that the amount of damages awarded by the jury is against the weight of the evidence.

Jury Instruction 14 directed the jury as follows:

> You must award Plaintiffs such sum as you may find to be the fair market rental value Plaintiffs could have obtained from third parties for a commercial telecommunications easement on the Plaintiffs' property from January 21, 2005 until the date of this trial.
>
> The phrase "fair market rental value" as used in this instruction means the price which a commercial telecommunications easement would bring when offered for rent by one willing but not obliged to rent and when rented by one willing or desirous to rent but who is not compelled to do so.
>
> In determining the fair market rental value of a commercial telecommunications easement on Plaintiffs' property, you may consider evidence of the value of a commercial telecommunications easement, including comparable rentals, the highest and best use to which the Plaintiffs' property may be applied or adapted, the value of the property if freely rented on the open market, and generally accepted appraisal practices.
>
> You may give all evidence the weight and credibility you believe are appropriate under the circumstances.

Thus, the jury was required to determine the fair market rental value of the easement that Plaintiffs could obtain from a third party. Plaintiffs' expert, Dr. Kilpatrick, presented evidence that the fair market rental value of such an easement would be $129,211,337.00. The jury obviously relied on that evidence to reach a verdict in exactly the same amount. However, Defendants presented evidence, including their actual records, to show costs the Defendants incurred to operate their commercial telecommunications company. Those costs were nearly equal to the income purportedly earned by the Defendants. While the Court is aware that there could be a dispute about the allocation of costs between the two Defendants and the actual amount of profits the Defendants in fact earned, even when viewed in the light most favorable to the verdict, the record does not support a finding that a third party or Defendants would be willing to rent an easement from the Plaintiffs in excess of $129 million, absent a profit sufficiently clear to offset not only the $129 million in rent (much less the amount to actually

purchase the easement, as calculated by dividing rental by Dr. Kilpatrick's seven percent conversion factor, *see* Doc. 867, p. 91), but also to offset the reasonable operating costs of their telecommunications company.

The Court's finding that the verdict is against the weight of the evidence is further justified by its conclusion that it erred in admitting evidence of revenue estimates for the Defendants from the 1990s. At a minimum, the revenue numbers admitted should have been limited to the time period of Plaintiffs' claim. Further, for purposes of actual damages, it should have been limited to actual revenue generated, not projected revenue. Also, it is possible that the jury was confused by the admission of all the revenue of the Defendants' commercial telecommunications company rather than revenue limited to or closely related to the trespass at issue in this case. Finally, the Court concludes in hindsight that it erred by not including in Instruction 14, a direction to the jury to consider commercial viability when determining what a willing buyer would pay for such an easement.

To be clear, both the actual and punitive damages awards reflected in the Clerk's Judgment of September 5, 2017 are hereby vacated. Instruction 20 directed the jury to consider "[w]hat amount of punitive damages, in addition to the other damages already awarded," was needed to punish and deter the Defendants. Because the actual and punitive damages awards were related, and the amount of actual damages awarded by the jury was against the weight of the evidence, both must be vacated.

The Court is aware of the resources that have been invested in this case by the parties and the judicial system. Nonetheless, the jury's award simply makes no sense in light of the record as a whole. The Court reached that conclusion at the close of trial and having now carefully

reviewed the transcript of trial, remains convinced the verdict cannot stand. The Court vacates the Clerk's Judgment of September 5, 2017 and orders a new trial.

Defendants' Motion for Judgment as a Matter of Law, Doc. 846, remains pending and will be addressed in due course as appropriate. *See Goldsmith v. Diamond Shamrock Corp.,* 767 F.2d 411, 415 (8th Cir. 1985) (the pendency of a motion for judgment notwithstanding the verdict does not toll the running of the period specified under Rule 59(d) in which a court can order a new trial *sua sponte*) (citing *Tarlton v. Exxon,* 688 F.2d 973, 978-79 (5th Cir. 1982)).

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: September 29, 2017
Jefferson City, Missouri