UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CHASE BARFIELD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:11-cv-4321NKL |
| ) | |
| SHO-ME POWER ELECTRIC ) | |
| COOPERATIVE, et al., ) | |
| ) | |
| Defendants. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES TO CLASS COUNSEL**

Pending before the Court is a motion for an award of attorneys' fees and expenses to Class Counsel under Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2). Doc. 925. Under Federal Rule of Civil Procedure 23(h)(3), the Court must make findings of fact and state its conclusions of law. The Court does so, as follows, and GRANTS the request for fees and expenses to Class Counsel:

1. This class-action settlement resolves a property-rights dispute. The dispute arises out of the use for commercial telecommunications of fiber-optic cable on electric-transmission easements by Sho-Me Power Electric Cooperative and Sho-Me Technologies, LLC (collectively, "Sho-Me"). The claims resolved by the Sho-Me Class Settlement Agreement affect parcels of land in Missouri covering approximately 758 miles of rights of way throughout the state.

2. On July 25, 2013, the Court entered an order certifying the following class with claims against Sho-Me and KAMO Electric Cooperative, Inc. and its subsidiary, K-PowerNet, LLC (collectively "Defendants"):All persons who own or owned land in Missouri underlying Defendants' electric-transmission lines that is burdened by an easement with either Defendant or their subsidiaries, which easement does not contain an arbitration clause, and on or in which a Defendant has licensed the fiber optic cable for commercial-telecommunication uses or has used

the fiber optic cable for commercial-telecommunication uses. Doc. 254 at 34-35. On July 1, 2014, the Class Administrator mailed notices of the litigation to 9,567 property owners along both electric cooperative defendants' electric-transmission easements in Missouri containing fiber-optic cable, and opened a telephone call center and website to provide information on the case to interested class members. Doc. 534 at 2-3.

3.  After the class was certified, Plaintiffs and Defendants filed cross-motions for summary judgment based on an appendix which summarized and divided easements into categories based on the language contained in the easements. On March 31, 2014, this Court, inter alia: (1) denied Sho-Me's Motion for Summary Judgment Against the Biffle and Robertson Plaintiffs; (2) granted Plaintiffs' Motion for Summary Judgment on the Issue of Defendants' Liability as to claims involving Category 1A-1C easements as to both the trespass and the unjust enrichment claims and denied Sho-Me's cross motion for judgment in its favor; (3) granted Sho-Me's Motion for Summary Judgement on the Issue of Liability as to claims involving Category 1D, 2A-2B, and 3 easements and denied Plaintiffs' cross motion for judgment in its favor; (4) granted Sho-Me's Motion for Summary Judgement as to any claim outside the applicable statute of limitations; (5) denied Sho-Me's Motion for Summary Judgment Based on Class Consent; and (5) granted in part and denied in part Sho-Me's Motion for Summary Judgment Against the KAMO Class Members; and (6) denied summary judgment as to any party on claims based on Category 1E easements. Doc. 396.

4.  Damages on Plaintiffs' unjust enrichment claims against Sho-Me were tried to a jury and resulted in a verdict in favor of the Plaintiffs on February 6, 2015. Doc. 621. Sho-Me appealed, inter alia, the class certification order of this Court, the summary judgment orders of this Court, and the jury verdict on unjust enrichment damages to the Eighth Circuit Court of Appeals, which issued its opinion on March 29, 2017. Doc. 762. The Court of Appeals affirmed

this Court's ruling with respect to trespass liability and with respect to class certification, but reversed this Court's ruling with respect to unjust enrichment liability. The case was remanded to this Court so that Plaintiffs could pursue damages on their trespass claim.

5. Damages on Plaintiffs' trespass and punitive damages claims against Sho-Me were tried to a jury and resulted in verdicts in favor of Plaintiffs on September 5, 2017. Doc. 863. This Court vacated the judgment on those verdicts on September 29, 2017. Doc. 883. This Court set a new trial date of June 25, 2018. Doc. 904.

6. A settlement conference with Magistrate Judge John T. Maughmer was held on May 22, 2018. On June 7, 2018, the Parties informed the Court that they had executed a settlement term sheet as the result of the settlement conference with Judge Maughmer. Doc. 913.

7. On July 24, 2018, Plaintiffs and Sho-Me moved under Rule 23(e) for an order preliminarily approving the proposed settlement of the Class Members' claims in accordance with the Sho-Me Class Settlement Agreement and approving the form and plan of notice of the proposed settlement. Doc. 916.

8. On July 30, 2018, the Court entered an order preliminarily approving the Sho-Me Settlement and approving the form and manner of notice. Doc. 918. On August 24, 2018, the Class Administrator mailed notices of the Sho-Me Settlement to 4,473 current and former property owners along Sho-Me Electric Cooperative's electric-transmission lines in Missouri containing fiber-optic cable, and opened a separate Settlement call center and website to provide information on the proposed Sho-Me Settlement to Sho-Me Class Members. The notice, which was also posted on the website, advised in pertinent part:

> The Court will hold a hearing on November 15, 2018 to consider whether to approve the Settlement and a payment of attorneys' fees up to $8,333,333 and costs and expenses up to $1,200,000 to be paid by the Sho-Me Defendants.

Doc. 917-2, Ex. 2; Doc. 917-2, Ex. 3 at ¶ 22. The notice further advised that the Court would

3

hold a Fairness Hearing at 1 P.M. on November 15, 2018, at which time the Court would "consider how much to pay Class Counsel." *Id*. at ¶ 27. On November 15, 2018, the Court held the final Fairness Hearing. There were no objections.

9. The Sho-Me Class Settlement Agreement provides in pertinent part:

> 1. Within ten (10) Days of Preliminary Approval, Sho-Me will deposit Two-Hundred-Eighty Thousand Dollars ($280,000) into the Notice Fund to be used to pay Administrative Expenses already accrued or to be accrued in connection with the Database of Identification Information and the cost of Notice of Preliminary Approval and Notice of Final Approval. No portion of this deposit will be returned to Sho-Me even if the Court does not enter an Order and Judgment approving the Agreement or an Order and Judgment does not become Final.
>
> 2. Within ten (10) Days of the date on which the Order and Judgment becomes Final, Sho-Me will pay the sum of Twenty-Four Million, Seven-Hundred-Twenty Thousand Dollars ($24,720,000). Such payment shall be hereinafter referred to as the "Settlement Fund" and shall be used to pay Benefits, Administrative Expenses not covered by the Notice Fund, and any Fee and Expense Award approved by the Court. All interest accruing in the Settlement Fund under either of the two options below, less any fees required to maintain the Settlement Fund account, will be paid as Supplemental Benefits in accordance with Section II.D.2.c below. At Sho-Me's option, the Settlement Fund deposited at Central Bank, 238 Madison Street, Jefferson City, MO 65101 shall be either: (1) deposited in or transferred to a Qualified Settlement Fund ("QSF") within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and all rules and regulations thereunder, and the QSF shall operate under the terms of a QSF Trust Agreement, which shall be consistent with the terms of this Agreement and the Order and Judgment of the Court establishing the QSF; or (2) deposited in a bank account established by the Claims Administrator.

Settlement Agreement § II.C.1-2 (Doc. 917-1 at 10). The Parties have informed the Court that both accounts will be established as Qualified Settlement Funds.

10. The total gross value of the Settlement is $25,000,000, comprised of $280,000 deposited in a Notice Fund within 10 days of this Court's preliminary approval order and $24,720,000 to be deposited in a Settlement Fund within 10 days of the Approval Order becoming Final. The Settlement Fund will be used to pay benefits to Sho-Me Class Members, Administrative Expenses not covered by the Notice Fund, and the Fee and Expense Award ordered by this Court. Administrative Expenses include such expenses advanced by Class Counsel during the course of

4

the litigation and any additional compensation ordered by this Court for the Class Representatives. No portion of the $25,000,000 will revert to Sho-Me.

11. Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by the parties' agreement." The Rule further provides that "[a] claim for an award must be made by motion under Rule 54(d)(2)," notice of which must be "directed to class members in a reasonable manner" and that the Court "must find the facts and state its legal conclusions under Rule 52(a)." Fed. R. Civ. P. 23(h)(1) and (3). In turn, Rule 54(d)(2) requires a claim for fees to be made by motion, and specifies its timing and content, including, in relevant part, "the grounds entitling the movant to the award" and "the amount sought." Fed. R. Civ. P. 54(d)(2)(B).

12. Notice of Plaintiffs' fee-award motion was provided in the mailed and published settlement notices and on the settlement website. Plaintiffs have moved for an award of attorneys' fees and expenses of $8,667,999 (representing fees of $8,333,333 and Class Counsel Litigation Costs of $334,666); reimbursement of previously advanced Administrative Costs of $285,718; and a total of $30,000 in incentive awards for the Class Representatives. Sho-Me does not object. *See* Doc. 925. The Class Counsel's total for requested costs and expenses is less than the amount provided in the settlement notice. *See* Doc. 917-2, Ex. 3 at ¶ 22. The Court has already approved the Class Representative incentive awards. Doc. 929.

13. The "amount of any [attorney fee] award rests within the sound discretion of the [district] court." *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1094 (8th Cir. 2012) (quoting *Litton Microwave Cooking Prods. v. Leviton Mfg. Co.*, 15 F.3d 790, 796 (8th Cir. 1994)). "Courts utilize two main approaches to analyzing a request for attorney fees[,] the 'lodestar' methodology [and] . . . the 'percentage of the benefit' approach." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996).

14. The percentage-of-the-benefit, or percentage-of-the-fund approach "permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id*. at 244-45. "It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). Indeed, "where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method may be preferable to the lodestar method for determining reasonable fees." *West v. PSS World Med., Inc.*, No. 4:13 CV 574 CDP, 2014 U.S. Dist. LEXIS 57150, at *3 (E.D. Mo. Apr. 24, 2014) (citations omitted); *see Johnston*, 83 F.3d at 245 ("[T]he [Third Circuit] Task Force recommended that the percentage of the benefit method be employed in common fund situations." (citing *Court Awarded Attorney Fees*, Report of the Third Circuit Task Force (Arthur R. Miller, Reporter), 108 F.D.R. 237 (1985); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) ("In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" (quoting *Petrovic*, 200 F.3d at 1157)).

15. Under the percentage-of-the-fund method, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The value of the common fund includes amounts that will be used for expenses. *Huyer v. Buckley,* 849 F.3d 395, 398 (8th Cir. 2017). Thus, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus attorneys' fees and expenses, and the expenses of administration. *See id*. at 479 ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.") (citation omitted).

16. This calculation applies to the type of settlement presented here, where Sho-Me

6

will pay the bulk of the gross value of the Settlement as a lump sum—none of which will be returned to Sho-Me—into a Settlement Fund out of which both class compensation and attorneys' fees will be paid. *See Johnston*, 83 F.3d at 246 ("Although under the terms of each settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.").

17. The Court finds that the fee and expense request is reasonable. At one-third of the value of the Sho-Me Settlement Fund as a whole, plus costs and expenses incurred by Class Counsel on behalf of the class, the fee-and expense award falls within the range of percentage-fee awards found reasonable in the Eighth Circuit. *See Huyer* 849 F.3d at 398-400 (upholding award of one-third of gross fund and administrative expenses); *Caligiuri v. Symantec Corp,* 855 F.3d 860, 865-66 (8th Cir. 2017) (upholding award of one-third of fund plus expenses of $738,605 and administrative costs of $2.4 million); *In re Xcel Energy, Inc.,* 364 F. Supp. 2d at 998 (compiling cases by percentage and stating "courts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions"); *see, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award of 36% of $3.5 million settlement fund, plus separate $40,000 award for expenses); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 U.S. Dist. LEXIS 130180, at *18 (N.D. Iowa Nov. 9, 2011) (awarding attorneys 36.04% of $18.5 million common fund in fees, plus separate reimbursement from settlement fund of over $900,000 in expenses); *West*, 2014 U.S. Dist. LEXIS 57150, at *4 (E.D. Mo. Apr. 24, 2014) ("In this case, the court believes that 33 percent is a reasonable percentage for attorney's fees. It is appropriate to apply a

reasonable percentage to the gross settlement fund."); *Wiles v. Sw. Bill Tel. Co.*, No. 09-4236-CV-C-NKL, 2011 WL 2416291, at *4 (W.D. Mo. June 9, 2011) (awarding attorneys one-third of $900,000 common fund); *Ray v. Lundstrom*, No. 8:10CV199, 2012 U.S. Dist. LEXIS 160089, at *11-12 (D. Neb. Nov. 8, 2012) (awarding one-third of $3.1 million fund in fees, plus separate reimbursement from the settlement fund of $77,900 in expenses); *Brehm v. Engle*, No. 8:07CV254, 2011 U.S. Dist. LEXIS 35127, at *6 (D. Neb. Mar. 30, 2011) (awarding one-third of $340,000 settlement fund in fees, plus separate reimbursement from the fund of $45,000 in expenses); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 571 (S.D. Iowa 2011) (awarding 33% of the settlement award in fees); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061, 1067-68 (D. Minn. 2010) (awarding one-third of $16 million settlement fund, plus separate reimbursement from the fund of $245,000 in expenses).

18. Although the Eighth Circuit "has not formally established fee-evaluation factors, … it has approved consideration of the twelve factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974)." *In re Iowa Ready-Mix Concrete*, 2011 U.S. Dist. LEXIS 130180, at *15 (N.D. Iowa Nov. 9, 2011) (citations omitted). The *Johnson* factors for evaluating attorneys' fees include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 n.3 (8th Cir. 2007) (citing *Johnson*, 488 F.2d at 717-19).

19. The time and labor this case has required has been substantial. Class Counsel

have provided the Court with declarations attesting that they have collectively expended over 30,000 hours of legal services to the class as a whole (not including any time spent administering the KAMO settlement or time they will spend in the future administering this settlement) and have advanced $620,385 in expenses not reimbursed by the KAMO Settlement. *See* Doc. 926 at 13. According to Plaintiffs' counsel, the time they expended in this litigation has a value of between $10.8 million and $16.3 million, depending on which permutation of hours and rates are used to make the calculation. Even considering the $2,166,667 award in the KAMO settlement, the "multiplier" here will be no more than 1, and may be substantially less than 1. In this Circuit fees that reflect multipliers in the range of 2.5 to 5.6 of lodestar have been approved. *Caligiuri,* 855 F.3d at 866. The expenditures of money and time to the claims being settled against Sho-Me strongly supports the requested fee award.

20. The long history of this case attests to the difficulty of the questions it presents. The Court has had an opportunity to observe the work of Class Counsel during this hotly contested, complex case and has concluded that the lawyers representing the class served their clients with a high level of skill. The Settlement Fund that has resulted from this work will provide substantial compensation for the class.

21. Class Counsel's retention letters with the Sho-Me Class Representatives provide for payment of fees contingent on success. The retention letters provide for all expenses to be reimbursed from any funds that result from Class Counsel's work and for Class Counsel to request that the Court approve an award of one-third of the Settlement Fund for fees.

22. The fact that there were no objections to the fee-and-expense award is also a factor to be considered. *See U.S. Bancorp Litig.*, 291 F.3d at 1038. The absence of timely objections by Class Members to Class Counsel's fee-and-expense request further supports finding it reasonable.

23. The Settlement Agreement provides the Settlement Fund and the account for Class Counsel's fees and expenses to each be established as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1. At the Final Fairness Hearing, the parties agreed Qualified Settlement Fund status will be beneficial to all concerned. The Settlement Agreement provides that Claims Administrator shall open the account for the Settlement Fund at Central Bank, 238 Madison Street, Jefferson City, Missouri.

24. The Claims Administrator has established a separate account at Central Bank to receive the fee and expense award. This account is called The Sho-Me Fiber Settlement, Sho-Me Plaintiffs Fees & Expenses Account ("Fees and Expenses Account").

**WHEREFORE** it is **ORDERED** that:

1. The account established by the Claims Administrator for the Settlement Fund at Central Bank, 238 Madison Street, Jefferson City Missouri, 65101 shall be a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1 and pursuant to this Court's subject matter jurisdiction and continuing supervision under Treas. Reg. Section 1.468B-1(c)(1), to receive, hold, and distribute the account funds in accordance with the terms of the Settlement Agreement and the Order and Judgment entered on November 15, 2018 (Doc. 929).

2. The Sho-Me Fiber Settlement, Sho-Me Plaintiffs Fees & Expenses Account ("Fees and Expenses Account") shall be established as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1 and pursuant to this Court's subject matter jurisdiction and continuing supervision under Treas. Reg. Section 1.468B-1(c)(1). The Claims Administrator shall make disbursements from the account to Class Counsel in amounts agreed by Class Counsel or by further order of the Court. The disbursements may be made in cash or future periodic payments.

3. The Claims Administrator shall disburse the incentive awards of $15,000 to

Dwight Robertson for his service as a Class Representative and of $15,000 jointly to Michael and Gina Biffle for their service as Class Representatives directly from the Settlement Fund Account.

4.      The Court awards Class Counsel a Fee and Expense award of $8,667,999 reflecting fees of $8,333,333 and Litigation Costs of $334,666. The Claims administrator shall transfer this award from the Settlement Fund to the Fee and Expense Account.

5.      The Court awards $285,718.42 to Class Counsel for reimbursement of previously advanced Administrative Costs (in accordance with Settlement Agreement § II.B). The Claims administrator shall transfer this award from the Settlement Fund to the Fee and Expense Account.

Dated: November 20, 2018                    /s/ Nanette M. Laughrey
                                            United States District Judge
                                            Jefferson City Missouri